[S. F. No. 12384. In Bank.—June 20, 1927.]

ANNA FRANK, Petitioner, v. H. J. MAGUIRE et al., as Members of the Board of Public Works of the City of Los Angeles, Respondents.

[1] STREET LAW — STREET OPENING ACT OF 1903 — SUFFICIENCY OF TITLE—CONSTITUTIONAL LAW.—The title of the Street Opening Act of 1903 (Stats. 1903, p. 376), as amended, is sufficient to permit the act to authorize municipalities to contribute toward the cost of improvements.

[2] ID.—SECTION 24, ARTICLE IV, CONSTITUTION—PURPOSE OF.—The purpose of section 24 of article IV of the constitution with respect to the title of acts was mainly to prevent legislators and the public from being entrapped by misleading titles to bills whereby legislation relating to one subject might be obtained under the title of another.

[3] ID. — CONTRIBUTION BY MUNICIPALITY OF PERCENTAGE OF COST — FICTITIOUS FRONTAGE—PROVISION FOR PROTEST — CONSTITUTIONALITY OF.—The provision of the Street Opening Act of 1903 for adding a fictitious or constructive frontage for determining the sufficiency of protest when the municipality's contribution is expressed in terms of percentage and failing to add a like or any frontage when the contribution is a specified amount does not constitute a discrimination prohibited by sections 11 and 21 of article I of the constitution, nor is this special legislation pro-

hibited by subdivision 7 of section 25 of article IV of the constitution.

[4] ID.—SEVERANCE PROVISIONS OF ACT.—If the provision of the Street Opening Act of 1903 requiring an added percentage of frontage, in determining the sufficiency of protests be declared in a proper case to grant a special privilege, such provision is severable and may be stricken out, as contrary to section 21 of article I of the constitution, without disturbing the right of the municipality to make the contribution in terms of percentage without an added frontage.

[5] ID.—ASSESSING COMPENSATION AND DAMAGES—DISREGARDING BENE-FITS—CONSTITUTIONALITY OF.—The provision of section 10 of the Street Opening Act of 1903 that the severance damages awarded to the several defendants in the condemnation suit authorized by the act must be fixed irrespective of any benefit from such improvement is not contrary to the uniformity requirements of the constitution.

[6] ID.—APPLICABILITY OF LAWS—CONSTITUTIONAL LAW.—The Street Opening Act of 1903 covers a field of legislation to which the general code sections relating to eminent domain (title VII of part III of the Code of Civil Procedure) are not made adaptable, and is a law general as to all coming within its provisions, and it involves no unlawful discrimination under the constitution.

[7] ID.—NATURE OF IMPROVEMENT—MATTER OF PUBLIC CONCERN—LOCAL IMPROVEMENT DISTRICT—BENEFITS.—The fact that an improvement is of great magnitude and also of certain public benefit does not deprive the city of the authority to proceed under the act of 1903, and the power to determine primarily the confines of an assessment district is one of legislative discretion.

[8] ID.—TRANSFER OF CITY FUNDS—ABSENCE OF CONFLICT WITH CHARTER.—The provision of section 30 of the Street Opening Act of 1903, in requiring a city council to transfer the city's proportionate cost of an improvement to the fund for the particular improvement, is not in conflict with the charter of the city of Los Angeles.

[9] ID.—DISTRICT BENEFITED—DESCRIPTION.—Under the provisions of section 2 of the Street Opening Act of 1903, as amended (Stats. 1925, p. 239), providing that the ordinance of intention shall in general terms describe the district to be benefited by said improvement and to be assessed to pay the expense thereof and shall refer to a map or plat to be filed in the city engineer's office, the proceedings will not be declared invalid because the description is longer and more in detail than it properly might have been.

[10] ID.—IMPROVEMENTS IN DIFFERENT PARTS OF CITY—RIGHT TO IN-CLUDE IN ONE PROCEEDING.—Where a proceeding under the street

Opening Act of 1903 contemplates opening, widening, and extending of one continuous public street which will constitute the establishment of a broad thoroughfare from the eastern to the western section of the city, the fact that certain streets in the extreme easterly portion of the city are to be widened and certain property is to be taken for street purposes in the extreme westerly section of the city does not constitute an objection to the proceeding upon the contention that said act does not contemplate the inclusion in one proceeding of street improvements in widely separated sections of the city.

[11] ID.—PAYMENT BY CITY—FUNDS.—Since the amendment of 1925 to the Street Opening Act of 1903, a city is not required to designate the funds from which it will pay its portion of the improvement.

(1) 36 Cyc., p. 1038, n. 70. (2) 36 Cyc., p. 1017, n. 78, p. 1029, n. 29. (3) 12 C. J., p. 1131, n. 62; 36 Cyc., p. 993, n. 92, p. 1008, n. 43. (4) 36 Cyc., p. 981, n. 45. (5) 36 Cyc., p. 992, n. 90. (6) 36 Cyc., p. 993, n. 93. (7) 28 Cyc., p. 945, n. 61, p. 1122, n. 13. (8) 28 Cyc., p. 1563, n. 3. (9) 28 Cyc., p. 1122, n. 13. (10) 28 Cyc., p. 1123, n. 24. (11) 28 Cyc., p. 978, n. 35 New.

APPLICATION for a Writ of Mandate to compel the Board of Works of Los Angeles to post and publish notices of an ordinance of intention to do street work. Writ granted.

The facts are stated in the opinion of the court.

Jesse E. Stephens, City Attorney, Robert J. Stahl, Deputy City Attorney, and Hewitt, Ford, McCormick & Crump for Petitioner.

C. B. Penn for Respondents.

SHENK, J.—This is an application by an interested property owner for a writ of mandate to compel the respondents as members of and constituting the board of public works of the city of Los Angeles to post and publish, as required by law, notices of the passage of an ordinance of intention to open, widen, straighten, lay out, and extend certain streets in the city of Los Angeles. The proceeding is designated as the Tenth Street project and is taken under the Street Opening Act of 1903 (Stats. 1903, p. 376) as amended. The matter is submitted on a general demurrer to the petition.

As disclosed by the petition and as thus admitted by the respondents the proceeding under attack is prosecuted for the purpose of acquiring certain property for street purposes, which property, in connection with existing public streets connecting therewith, will constitute a continuous public street from the easterly boundary of the city of Los Angeles at Indiana Street and Mines Avenue to Country Club Drive at Lucerne Boulevard. The extent of the improvement and of the assessment district is shown upon a map approved by the city council on January 5, 1927, and filed in the office of the city engineer. An examination of the petition and of the map discloses that this proceeding is practically the same as that attempted to be accomplished in a former proceeding which was declared by this court to be fatally defective in *O. T. Johnson Corp.* v. *City of Los Angeles,* 198 Cal. 308 [245 Pac. 164].

On the sixth day of January, 1927, the council adopted an ordinance of intention, a copy of which is attached to the petition. This ordinance was duly approved by the mayor on the following day and was published as required by law. On January 26, 1927, the respondents adopted a resolution wherein they formally refused to post and publish the notices of the passage of the ordinance of intention on the ground that said ordinance and the statute under which the same was adopted are invalid and that there is therefore no duty enjoined upon them by law to post and publish the "Notice of Public Work" as provided by the act, and that to proceed therewith would be an illegal expenditure of public money.

The demurrer presents eight separate objections to the proceeding. They will be considered in the order raised by the respondents and discussed in the briefs.

1. In section 6 of the ordinance of intention it is provided that the sum of $1,500,000 shall be paid out of the city treasury toward the expense of said improvement. [1] It is first contended that the title of the Street Opening Act of 1903 is insufficient to permit the act to authorize municipalities to contribute toward the cost of the improvement. The same point was raised, discussed, and insisted upon but ruled adversely to the contention in *O. T. Johnson Corp.* v. *City of Los Angeles, supra.* It is insisted that the determination of the question of the sufficiency of the title of

the act was not necessary to that decision for the reason that before the ruling on the point in that case it had been decided therein that the city had not complied with the jurisdictional requirements of the statute. Conceding that the ruling on this point was not necessary to the result in that case nevertheless it was involved therein and we are satisfied with the declaration therein made. When considered with reference to the rules governing the construction of titles (23 Cal. Jur. 650) it may not rightly be said that the title to the original act would constrict the body of the act to proceedings for improvements to be paid for wholly by special assessment. There is an additional reason why the present proceedings are not subject to attack on this ground. The former proceedings were instituted under the act as amended in 1913 and in 1921. The present proceedings were commenced after the effective date of amendments to the act adopted by the legislature in 1925 (Stats. 1925, p. 238). The title of the amending act specifically refers to "the contribution by the municipality to the expense of the improvement" provided for in the body of the amending act. It is insisted that the title to the original act should have been amended in order that the legislation be effective and that reference to the new matter in the title of the amending act was insufficient. **[2]** The purpose of section 24 of article IV of the constitution with respect to the title of acts was mainly "to prevent legislators and the public from being entrapped by misleading titles to bills whereby legislation relating to one subject might be obtained under the title of another" (*Abeel* v. *Clark*, 84 Cal. 226, 228 [24 Pac. 383]; *Matter of Maginnis,* 162 Cal. 200 [121 Pac. 723]). During the session of 1925 the particular bill before the legislature and the public was the amending bill and not the original bill. The amending bill clearly referred to the subject of contribution by the municipality. If the title of the amending act express the subject dealt with in the body thereof and is germane to the subject matter of the legislation it is sufficient independently of the original title (*Miller & Lux* v. *Drainage District,* 182 Cal. 252 [187 Pac. 1041]). That the amending act here in question does sufficiently refer to the subject of contribution by the municipality provided for in the body of the act is beyond question.

[3] 2. It is next contended that the method provided by statute for determining the sufficiency of protests is illegally discriminatory. Section 1 of the act provides for a class of public work and improvements which may be brought about under the act. The improvements under the present proceedings fall within such class. Section 2 of the act as amended in 1925 empowers the municipality to contribute toward the expense of the improvement mentioned in section 1 in the following language: "Said city council may, in its discretion, order and declare that the whole or any percentage of, or any sum toward the expense of said improvement be paid out of the treasury of the municipality, in which case the sum or percentage to be paid shall be stated in said ordinance of intention." The city is thus authorized to contribute (a) the whole, (b) a percentage of or (c) any sum toward the expense of such improvements. Section 4 of the act as amended in 1925 provides: "For the purpose of passing upon and determining the sufficiency of such protests in cases where by a resolution of intention it is declared that the city shall pay a percentage of the expense of the improvement, the city shall be deemed to be the owner of frontage within the assessment district. bearing the same proportion to the whole frontage therein as the proportion of the expense which it is to pay, and the actual frontage of property within such district shall be increased by the addition of such amount as is necessary to produce said result, and the amount of frontage as so increased shall be the total frontage to be used in determining whether a protest is signed by the owners of a majority of the frontage of the property fronting on streets or parts of streets within said assessment district."

Respondents take the position that where the city contributes toward the expense of an improvement a property owner should have the same privileges and burdens respecting the right of protest whether the city's contribution be expressed in terms of percentage or in a specified sum; that to add a fictitious or constructive frontage for determining the sufficiency of protests when the city's contribution is expressed in terms of percentage and to fail to add a like or any frontage when the contribution is a specified sum amounts to a discrimination prohibited by sections 11 and 21 of article I of the constitution and is special legislation pro-

hibited by subdivision 7 of section 25 of article IV of the constitution. There are two answers to this contention. First, it is only when the city in terms decides to contribute a percentage of the cost of the improvement that the so-called fictitious frontage may be added. It is not pointed out by respondents, nor do we perceive, how, by any equitable or practicable method, the frontage may be increased by percentage when the city decides to contribute a definite sum. The one method is entirely inapplicable to the other and the property owners in both cases are not similarly situated. The statute bears no evidence whatsoever of arbitrary discrimination as between the property owners in the two cases and there appears to be a reasonable basis for the classification. The constitutional requirement of uniformity is therefore satisfied (*Field* v. *Barber Asphalt Paving Co.*, 194 U. S. 618 [48 L. Ed. 1142, 24 Sup. Ct. Rep. 784]; *Johnson* v. *Gunn*, 148 Cal. 745 [84 Pac. 665]; 5 Cal. Jur. 823–831). Secondly, if it be assumed that the added percentage of frontage in the one case imposes more of a burden on the property owners who desire to obtain a requisite frontage protest than is imposed on the property owners in the other case, and if it be further assumed that the property owners in both cases are similarly situated, it would not follow that the entire provision with reference to contribution by the municipality must be stricken down. There is and can be under the statute no added percentage of frontage in the present proceeding and the property owners in the assessment district created therein will not therefore be subjected to the alleged additional burden. [4] If the provision of the statute requiring an added percentage of frontage be declared in a proper case to grant a special privilege it is clear that such provision is severable. In such case said provision might be stricken as contrary to section 21 of article I of the constitution without disturbing the right of the municipality to make the contribution in terms of percentage without an added frontage (*Bacon Service Corp.* v. *Huss*, 199 Cal. 21 [248 Pac. 235]). We are not to be understood as deciding or intimating that the provision of the statute requiring the added frontage is invalid, but are simply meeting counsel's argument that the entire provision with reference to contribution must fall if the requirement of added frontage be invalid.

[5] 3. It is next contended that the method provided by section 10 of the act of 1903 for assessing compensation and damages is contrary to the uniformity requirements of the constitution. Said section 10 provides that the severance damages awarded to the several defendants in the condemnation suit authorized by the act "must be fixed irrespective of any benefit from such improvement." Title VII of part III of the Code of Civil Procedure prescribes the rules to be followed in a proceeding under the general eminent domain law. Section 1248, which is embraced within that title, requires severance damages to be offset by benefits received from the improvement. It is insisted by counsel for respondents that there is no difference between the condemnation of property under the act of 1903 and the condemnation of property under the general provisions of the Code of Civil Procedure upon which to base a discrimination entitling a property owner to more severance damages in one proceeding than in the other. While there may be no difference between the results ultimately accomplished in the two proceedings, i. e., the acquisition of private property for public street purposes, there is a vast difference between the methods employed to bring about that result. In both cases just compensation to the owner for the taking or damaging of his property for public use is contemplated. In both cases the owner is subjected to a charge for benefits accruing to his remaining property. Under the general law this benefit is deducted from his damages in computing the award. Under the act of 1903 no deduction for benefits is made in making the award, but the property owner is subsequently and in the same proceeding subjected to such a deduction by way of assessment for benefits. The fact that the deduction in the one case may not be exactly the same in amount as the assessment in the other is of no consequence. Theoretically, they are intended to comprehend the same factor. The same general result to the property owner is thus sought to be accomplished, although it is impossible to say that in each case the exact result in dollars and cents is effectuated. So far as the city itself and the taxpayers generally are concerned the proceedings are vastly different. Under the general law the cost of the improvement is usually borne by the taxpayers at large either from the general funds of the city or from funds derived from the sale of bonds. In the

special assessment proceeding the cost falls upon the property owners in the assessment district. In the former case the right of eminent domain is exercised. In the latter both the right of eminent domain and the right of taxation are exercised. If in any proceeding under the act of 1903 the condemnation defendant be subjected to a deduction for severance damages of the amount of benefits and be later required to pay an assessment for the identical benefits, a double payment or a species of double taxation would inevitably result. [6] The foregoing are considerations which lead to the conclusion that the act of 1903 covers a field of legislation to which the general code sections are not made adaptable, and is a law general as to all coming within its provisions (*Hellman* v. *Shoulters,* 114 Cal. 136 [44 Pac. 915, 45 Pac. 1057]). The act therefore involves no unlawful discrimination as contended for by the respondents.

[7] 4. The proceedings under review admittedly contemplate an improvement of great magnitude. The termini of the proposed improvement are many miles distant and the project is doubtless a matter of much public concern. From these facts the respondents conclude and insist that the improvement is not of a local nature and hence a local district cannot legally be created to meet any part of the expenses thereof. This objection to the proceedings is grounded upon the fact that in section 1 of the ordinance of intention it is declared "that the public interest and convenience require, and that it is hereby found and determined that the public interest and necessity require, and that it is the intention of the council of the city of Los Angeles to order the following improvement to be made." We find no merit in the contention. Section 1 of the act of 1903 provides that "Whenever the public interest and convenience may require, the city council of any municipality shall have full power and authority to order the laying out, . . . of any one or more of any public streets," etc. Section 2 of the act authorizes the city council to establish a district "to be benefited by said improvement, and to be assessed to pay the expenses thereof, and to be known as the assessment district." Admittedly the proceedings are taken under the act of 1903 and the assessment district is described in the ordinance of intention. The fact that the city is proceeding under said act is evidence that the improvement is local in its nature, beneficial

to the property in the assessment district and there is nothing in the record to justify a conclusion to the contrary. The power to determine primarily the confines of the assessment district is one of legislative discretion (*Cohen* v. *City of Alameda,* 183 Cal. 519 [191 Pac. 1110]; *Rockridge Place Co.* v. *City Council,* 178 Cal. 58 [172 Pac. 1110]; *Duncan* v. *Ramish,* 142 Cal. 691 [76 Pac. 661]; 25 R. C. L. 97, 98; 29 C. J. 743). The fact that the improvement is of great magnitude and also of certain public benefit does not deprive the city of the authority to proceed under the act of 1903. If it were otherwise, it is conceivable that all similar proposed improvements might be subjected to attack on this ground and the act practically nullified. Unless an abuse of discretion is manifest, and none here appears, the proceedings cannot be disturbed on this ground.

[8] 5. It is next contended that the provision of section 30 of the act of 1903, in so far as it requires the city council to transfer the city's proportionate cost of the improvement to the Tenth Street Improvement Fund, is in conflict with the charter of the city of Los Angeles. Section 30 of the act provides: ''The street superintendent shall from time to time, pay over to the city treasurer all moneys collected by him on account of any assessment made under the provisions of this act. The city treasurer shall, on receipt thereof, place the same in a special fund, designating such fund by the name of the improvement for which the assessment was made. The city council shall on or before the time when said assessments become delinquent, cause to be transferred from the general or other appropriate fund of the city to said special fund the percentage of, or the sum toward the total expense of such improvement to be paid by the city as and when so provided in the ordinance of intention.'' Section 380 of the city charter provides: ''All money paid into the city treasury shall be credited to and kept in separate funds in accordance with the provisions of this charter, the law, or ordinance.'' The said section then establishes certain specifically named ·funds of which the city has ownership or control either in its governmental or proprietary capacity and then specifies ''trust funds and other funds as may be required by law or ordinance'' as funds to be accounted for on the books of the city treasurer. Section 381 of the charter then provides: ''It shall not be lawful to transfer money from one

fund to another, or to use the same in the payment of demands on another fund, except in the case of the unappropriated balance fund and the reserve fund or except as in this charter specifically provided.'' It is the contention of the respondents that the charter contains no provision for the transfer of money from any city fund to the fund of a special assessment district. The argument seems to be that since the assessment district fund is a fund ''required by law'' to be established during the course of the proceedings and as the charter contains no specific provision for the transfer of money from a city fund to such an assessment district fund to defray a portion of the cost of the improvement, therefore the city is without power to make any contribution whatsoever. It is conceded by the respondents that the city had the option to proceed under the act of 1903 and that when it elected to proceed thereunder it was bound by the terms of the act. When it so elected the city became the mandatory through which the purposes of the act were to be accomplished. The city itself will have no interest in the special fund thus created other than to see that it is properly collected and paid out as provided for in the statute. The provisions of the charter and of the act must be read together. When so read and considered it cannot be said it was the intention of the charter to prohibit the transfer of the city's contribution from a city fund to the special assessment fund. Undoubtedly it would have been competent for the act of 1903 to have provided that the custody of the special assessment fund be in the county treasury or in a savings bank subject to disbursement on the order of the board of public works. In such event the payment from the city fund to the said special fund for the purpose of contribution could in nowise be affected by the charter provision. Furthermore, section 380 of the charter provides that funds ''required by law'' be kept in the city treasury in accordance with law. It is manifest that when the city is authorized to make a contribution toward such an improvement the funds in the city treasury from which the contribution may be made are held subject to the terms of the statute specifying how the contribution may be made in order to accomplish the purpose. We find no inconsistency between the charter and the general law in the respects thus contended for by respondents.

[9]   6. Section 2 of the act of 1903, as amended (Stats. 1925, p. 239), provides that the ordinance of intention "shall in general terms, describe the district to be benefited by said improvement and to be assessed to pay the expense thereof . . . and refer to a map or plat, approved by the city council, which shall . . . indicate by a boundary line the extent of the territory to be included in said assessment district, which plat or map shall be on file in the office of the city engineer . . . and shall govern for all details as to . . . the extent of the said assessment district." This map or plat was so approved and filed in the present proceedings. It is contended by respondents that the description of the assessment district in the ordinance of intention was not a description "in general terms," but was in much detail and so technical as to render it unintelligible. The ordinance of intention contains what purports to be a legal description of the boundaries of the assessment district. The act as originally adopted required that the ordinance of intention should *specify* the boundaries of the district to be benefited. This requirement was deemed to impose the duty on the city of describing by correct and legal description the boundaries of the assessment district, and proceedings were declared invalid because the boundaries of the assessment district had not been so described (*Walker* v. *City of Los Angeles,* 23 Cal. App. 634 [139 Pac. 89]). The rigid requirements of the statute remained in force until 1921, when it was provided by amendment that the ordinance of intention "shall in general terms, describe the district to be benefited" with the further requirement that the ordinance should refer to a map or plat approved by the city council and filed in the office of the city engineer, which map or plat should "govern for all details as to the extent of the said assessment district" (Stats. 1921, p. 566). The rigidity of the former requirement was thus relaxed and the undoubted purpose of the new provision was to make something less than a technical legal description sufficient, aided by a reference to the map or plat on file. It is obviously impossible to lay down a general rule as to what in all cases should constitute a "description in general terms." Something short of a full legal description is authorized by the statute. If a general description be sufficient, a full description would also seem to be sufficient. Undoubtedly the description of the assessment

district in the present proceedings could with propriety have been made much shorter and more general, but we find no sufficient reason for declaring the proceedings invalid because the description is longer and more in detail than it properly might have been.

[10]    7. The ordinance of intention shows that certain streets in the extreme easterly portion of the city are to be widened and that certain property is to be taken for street purposes in the extreme westerly section of the city. It is contended by the respondents that the act of 1903 does not contemplate the inclusion in one proceeding of street improvements in widely separated sections of the city. The case of *Southwick* v. *Santa Barbara,* 158 Cal. 14 [109 Pac. 610], is relied upon. It appeared in that case that the improvement in hand consisted of grading, curbing, guttering, and paving certain streets in two separate and distinct sections of the city that were not contiguous and were widely separated; that the said two sections had no community of interest; that the real property of either one of said sections would not receive any benefit from street improvements had in the other section and that the work to be done in the one section was different from the work to be done in the other. It was held that the inclusion of these two widely separated sections of the city in one assessment district, all of the property of which was to be assessed to pay the cost of all of the improvements, was not authorized by the local improvement act of 1901 (Stats. 1901, p. 34). But the improvement contemplated by the present proceedings is not of the character described in that case. In the present case the improvement will be the opening, widening, and extending of one continuous public street. It will constitute the establishment of a broad thoroughfare from its eastern to its western terminus. From an examination of the record it cannot be said as a matter of law that all property in the assessment district is not benefited by the entire improvement.

[11]    8. It is next contended that the act of 1903 as now in force, when read in connection with the charter of the city, requires that the fund from which the city's proportion of the expense is to be paid must be designated in the ordinance of intention. Prior to the amendment of 1925 section 2 of the act, so far as material here, read as follows: "Said city council may, in its discretion, order and declare

that the whole or any percentage of the expense of said improvement be paid out of the treasury of the municipality from such fund as the council may designate, in which case it shall be so stated in said ordinance of intention." By the amendment of 1925 that portion of the section was made to read as follows: "Said city council may, in its discretion, order and declare that the whole or any percentage of, or any sum toward the expense of said improvement be paid out of the treasury of the municipality, in which case the sum or percentage to be paid shall be stated in said ordinance of intention." It will be noted that the clause "from such fund as the council may designate" was omitted from the section as amended. Section 6 of the ordinance of intention provides: "It is further ordered and declared by said city council of the city of Los Angeles that the sum of $1,500,-000.00 be paid toward the expense of said improvement, in section 1 of this ordinance described, out of the treasury of said city." Under the statute prior to its amendment the name of the fund from which the contribution was to be paid was required to be stated (*O. T. Johnson Corp.* v. *City of Los Angeles, supra*). The undoubted purpose of the amendment was to avoid the requirement that the fund be so designated. When the time comes for the city to order the payment of the contribution it must be assumed that such payment will be made from a fund from which it will be lawful to make the payment. The language of said section 6 is deemed sufficient for the purposes of the ordinance of intention.

A peremptory writ is ordered to be issued commanding the respondents to post and publish the notices of the passage of said ordinance of intention in the manner and form required by law.

Waste, C. J., Curtis, J., Preston, J., Langdon, J., and Seawell, J., concurred.