[S.F. No. 23341. In Bank..Apr. 8, 1976.]

LAURENCE DAWSON et al., Plaintiffs and Appellants, v.
TOWN OF LOS ALTOS HILLS, Defendant and Respondent.

COUNSEL

Michael di Leonardo, di Leonardo, Blake, Kelly, Aguilar & Leal, di Leonardo, Kelly, Aguilar & Leal and di Leonardo & Aguilar for Plaintiffs and Appellants.

Robert G. Auwbrey and Wilson, Jones, Morton & Lynch for Defendant and Respondent.

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, E. Clement Shute, Jr., and Richard C. Jacobs, Deputy Attorneys General, as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**SULLIVAN, J.**—In this action for declaratory and injunctive relief plaintiff property owners sought a judgment declaring that a certain Sanitary Sewer Assessment District No. 9 and a resolution adopted prior to its formation were void and illegal and that defendant Town of Los Altos Hills and its agents be enjoined from levying assessments proposed to be called for pursuant to the formation of the district. The trial court denied plaintiffs all relief, holding in substance that the district was duly and regularly formed and established under applicable law and that the challenge to the questioned resolution was moot. Plaintiffs appeal from this judgment.

The Town of Los Altos Hills (Town) is situated in two natural basins, one of which drains in the direction of the City of Los Altos and the other in the direction of the City of Palo Alto. In 1967 and 1968 it entered into contracts with each of these cities for the handling of sewer discharge from the Town. The Los Altos contract, which permitted Town property owners in that basin to individually purchase capacity rights, did not commit the Town to the payment of any set amount of money. The Palo Alto contract, on the contrary, was based upon the assumption that all available building sites in the Palo Alto Drainage Basin would be occupied within a relatively short period of time. Accordingly, it provided for the purchase by the Town of capacity rights in the Palo Alto sewage system for all such sites. To this end, the Town agreed to pay over a five-year period the sum of approximately $400,000. Subsequently, it incurred an additional obligation of $270,000 as its share of the cost of a new treatment plant. This contract and these obligations eventually produced the difficulties underlying the present suit.

In 1971 problems in discharging these financial obligations became imminent. To resolve them, the Town council determined to form a

special assessment district in that portion of the Town located in the Palo Alto Drainage Basin and in furtherance of this plan adopted a series of resolutions. Among other things, it set a time and place for a public hearing on the resolution of intention to form the special assessment district, on the engineer's report directed to be prepared, and on any protests thereafter filed. After a hearing on August 2, 1971, the council overruled the protests by a vote of four to one and thereafter by resolution[1] approved the engineer's report and levied assessments.

Plaintiffs thereupon commenced the instant action "on behalf of themselves and all other citizens, property owners, taxpayers and residents in the Town . . . who are or may be assessed in connection with" the district. The complaint alleged that the formation of the district was violative of various state and federal constitutional provisions as well as relevant provisions of state law and that therefore the formation of the district and the special assessments imposed pursuant thereto were without force of law. In particular, it was alleged, plaintiffs were being assessed to meet a contractual commitment of the Town "which is wholly or partly for the benefit of all of the property owners within the municipal boundaries of the Town . . . and for which adequate funds would have been, and would be, available had defendants not enacted" and adhered to a certain Resolution No. 458, which was passed in 1968 (i.e., at essentially the same time as the Palo Alto contract) and set forth the Town's then sewer policy; that the proposed assessments "were made completely without consideration of special benefits conferred upon each parcel of land within said proposed district"; and "that said proposed

---

[1]As here relevant, the resolution stated that the council "does hereby FIND, DETERMINE, and ORDER, as follows: . . . 5. That the public interest and convenience require, and said Council does hereby order the acquisitions and/or improvements to be made as described in and in accordance with said Resolution of Intention . . . reference to which is hereby made . . .[;] 6. That the diagram showing the assessment district referred to and described in said Resolution of Intention, and also the boundaries and dimensions of the respective subdivisions of land within said district as the same existed at the time of the passage of said Resolution of Intention, each of which subdivisions having been given a separate number upon said diagram, as contained in said report, be, and it is hereby, finally approved and confirmed as the diagram of the properties to be assessed to pay the costs and expenses of said acquisitions and/or improvements[;] 7. That the assessment of the total amount of the costs and expenses of the proposed acquisitions and/or improvements upon the several subdivisions of land in said district in proportion to the estimated benefits to be received by said subdivisions, respectively, from said acquisitions and/or improvements, and of the expenses incidental thereto, contained in said report, be, and the same is hereby, finally approved and confirmed as the assessment to pay the costs and expenses of said acquisitions and improvements."

assessments are so unjust, discriminatory and without regard to benefits conferred as to amount to a fraud upon these plaintiffs." Plaintiffs prayed for a judgment declaring that the formation of the district and Resolution No. 458 were without force of law; that plaintiffs were not required to comply with demands made by the Town with regard to payments illegally assessed thereunder; and that the Town and its agents be enjoined from exercising any powers, rights, or duties—including the levying of further assessments—pursuant to the formation of the district.

So far as is here relevant, the court found and concluded in substance that all the proceedings relative to the formation of the district were properly and correctly conducted pursuant to the Municipal Improvement Act of 1913 and the Improvement Bond Act of 1915; that there was substantial evidence adduced before the Town council at the hearing of August 2, 1971, to support its determination "that the property of plaintiffs . . . was benefited by the proposed acquisition and its determination as to the amount of benefit"; that all real property which was specially benefited was included within the boundaries of the district and all property not so benefited was excluded therefrom, and that "all the assessments were uniformly and equally spread in accordance with the law"; that "the acquisition of capacity and disposal rights and the right of service and use in sanitary sewerage collection, treatment, outfall and disposal facilities of the City of Palo Alto constitute works and improvements of a local nature within the meaning of the Municipal Improvement Act of 1913," such acquisition being authorized by the act; that the question of the validity of Resolution No. 458 was moot because the resolution, in either its original or amended form, was not followed by the Town council in forming the district or spreading the assessment therein, and moreover such resolution had been rescinded; and finally, that the district "was duly and regularly formed and established under and pursuant to the Municipal Improvement Act of 1913 and bonds to be issued on the unpaid assessments pursuant to the Improvement Bond Act of 1915, and all proceedings undertaken by the defendant [Town] in the formation of [the district] are valid and lawful." Judgment was entered accordingly. This appeal followed.

Plaintiffs advance four basic contentions on appeal. Of these we need concern ourselves with only three. The remaining contention may be briefly characterized as one urging that the trial court failed to appreciate the representative character of the action and in so doing erroneously concluded certain class members to have waived their rights by

neglecting to undertake certain procedural steps. In view of our ultimate conclusion that the trial court properly denied all relief, we are satisfied that this last mentioned contention need not concern us since the precise identity of all those seeking such relief thereby dissolved as a matter of no consequence. Accordingly, and following some general introductory remarks concerning the nature of the instant proceeding and the appropriate scope of review, we shall limit our consideration to plaintiffs' contentions (1) that the trial court erred in concluding that the Town council proceeded upon proper statutory authority in the creation of the district; (2) that the trial court erred in refusing the determine that Resolution No. 458 was unconstitutional; and (3) that the trial court erred in upholding the Town council's determinations relative to the benefits to accrue to the properties assessed.

I

As already stated, the instant action sought declaratory and injunctive relief. Its essential object, as disclosed by the prayer, is a declaration that the district here in question is without legal existence, and that all obligations and duties arising as a result of its formation are likewise of no legal effect. It is therefore an "action or proceeding" contesting "the validity of an assessment" (Sts. & Hy. Code, § 10400; see also *Vogel* v. *City of Millbrae* (1959) 167 Cal.App.2d 403 [334 P.2d 620]) and as such differs in no essential respect from other civil actions or special proceedings brought to test the validity of a special assessment.[2]

The standard of judicial review which is applicable in such proceedings flows from the nature of the action being reviewed. A special

---

[2]See, for example, *Allen* v. *Los Angeles* (1930) 210 Cal. 235 [291 P. 393] [injunction]; *Blake* v. *City of Eureka* (1927) 201 Cal. 643 [258 P. 945] (overruled on other grounds in *Bellus* v. *City of Eureka* (1968) 69 Cal.2d 336, 346 [71 Cal.Rptr. 135, 444 P.2d 711]) [injunction]; *Frank* v. *Maguire* (1927) 201 Cal. 414 [257 P. 515] [mandate]; *Rutledge* v. *City of Eureka* (1925) 195 Cal. 404 [234 P. 82] [injunction]; *Larsen* v. *San Francisco* (1920) 182 Cal. 1 [186 P. 757] [action under ordinance to contest validity and quiet title]; *Spring Street Co.* v. *City of Los Angeles* (1915) 170 Cal. 24 [148 P. 217] [declaratory and injunctive relief]; *Duncan* v. *Ramish* (1904) 142 Cal. 686 [76 P. 661] [injunction]; *Emery* v. *San Francisco Gas Co.* (1865) 28 Cal. 345 [action for recovery of money paid pursuant to assessment]; *Burnett* v. *Mayor etc. of Sacramento* (1859) 12 Cal. 76 [action for recovery of money paid pursuant to assessment]; *Harrison* v. *Board of Supervisors* (1975) 44 Cal.App.3d 852 [118 Cal.Rptr. 828] [injunction]; *Auburn Lbr. Co.* v. *City of Auburn* (1968) 258 Cal.App.2d 732 [66 Cal.Rptr. 58] [mandate]; *Dumas* v. *City of Sunnyvale* (1965) 231 Cal.App.2d 796 [42 Cal.Rptr. 302] [declaratory and injunctive relief]; *Yaeger* v. *City Council* (1965) 231 Cal.App.2d 557 [41 Cal.Rptr. 904] [mandate]; *Tudor* v. *City of Rialto* (1958) 164 Cal.App.2d 807 [331 P.2d 122] [declaratory (?) and injunctive relief]; *Jenner* v. *City Council* (1958) 164 Cal.App.2d 490 [331 P.2d 176] [injunction].

assessment district—unlike other public districts such as irrigation districts and reclamation districts—is not a legal entity with officers and corporate rights and duties. rather such a district, in the words of the Municipal Improvement Act of 1913 (under which the Town council here proceeded), is merely "the district of land to be benefited by the improvement and to be specially assessed to pay the costs and expenses of the improvement and the damages caused by the improvement." (Sts. & Hy. Code, § 10008.)[3] The procedure for "forming" such a district involves the passage of a resolution of intention by the legislative body of the city or county involved (§ 10200); the preparation of a report containing plans for the proposed improvement if not already installed, an estimate of the cost of the improvement, a diagram showing the boundaries of the district and the parcels within it to be assessed, and a proposed assessment scheme showing the individual assessments against such parcels in proportion to the estimated benefits to be received by them respectively (§§ 10203, 10204); the consideration and modification of the report by the legislative body (§ 10300); the public hearing of protests (§ 10301; see also § 10310); and finally, confirmation[4] of the proposed assessment, with modification or correction (§§ 10311, 10312). It is this final step which constitutes the "formation" of a special assessment district: "When upon the hearing the proposed assessment is confirmed as filed, as modified, or corrected, by resolution the legislative body shall order the proposed improvement to be made or acquired, and declare its action upon the report or assessment. The resolution shall be final as to all persons, and the assessment thereby levied upon the respective subdivisions of land in the assessment district." (§ 10312.)

■ As is manifest from this brief review, the establishment of a special assessment district takes place as a result of a peculiarly legislative process grounded in the taxing power of the sovereign. This was clearly recognized in early decisions of this court, including *Burnett* v. *Mayor etc. of Sacramento, supra,* 12 Cal. 76, 83,[5] *Emery* v. *Bradford*

---

[3]Hereafter, unless otherwise indicated, all section references are to the Streets and Highways Code.

[4]The improvement may be rejected at this point upon majority protest. "If the protests are against the proposed improvement and the legislative body finds that such protests are signed by the owners of more than one-half of the area of the land included within the assessment district, all further proceedings under the resolution of intention are barred, and no new resolution of intention for the same improvement shall be passed within six months after decision of the legislative body on the hearing, unless the protests are overruled by an affirmative vote of four-fifths of the members of the legislative body. ..." (§ 10311.)

[5]"The assessment is the tax levied to meet the expenses of the improvement."

(1865) 29 Cal. 75, 84,[6] *Duncan* v. *Ramish, supra,* 142 Cal. 686, 691,[7] and *Allen* v. *Los Angeles, supra,* 210 Cal. 235, 238,[8] and has been noted by us as recently as *City of Baldwin Park* v. *Stoskus* (1972) 8 Cal.3d 563, 568 [105 Cal.Rptr. 325, 503 P.2d 1333, 59 A.L.R.3d 525][9]. The scope of judicial review of such actions is accordingly quite narrow. "The board of supervisors is the ultimate authority which is empowered to finally determine what lands are benefited and what amount of benefits shall be assessed against the several parcels benefited . . . . This determination is made after a full hearing accorded to all persons interested to make such objection as they see fit. In such a case the court will not declare the assessment void unless it can plainly see from the face of the record, or from facts judicially known, that the assessment so finally confirmed is not proportional to the benefits, or that no benefits could accrue to the property assessed. (*Duncan* v. *Ramish,* 142 Cal. 692 . . . .)" (*Larsen* v. *San Francisco, supra,* 182 Cal. 1, 15.)[10] (See also *Rutledge* v. *City of Eureka, supra,* 195 Cal. 404, 416-417; cf. *Frank* v. *Maguire, supra,* 201 Cal. 414, 423.)

A similar standard, cast in terms of substantial evidence, has been applied by the Courts of Appeal in certain more recent cases. (See, for example, *Jeffery* v. *City of Salinas* (1965) 232 Cal.App.2d 29, 35 [42 Cal.Rptr. 486]; *Dumas* v. *City of Sunnyvale, supra,* 231 Cal.App.2d 796, 800-801; *Jenner* v. *City Council, supra,* 164 Cal.App.2d 490, 497.) These decisions, however, rest in large part upon rules relating to judicial review of the factual findings of local agencies which antedated our decision in *Strumsky* v. *San Diego County Employees Retirement Assn.*

---

[6]"When the work is accomplished, for the purpose of defraying the expense, the municipal authorities levy an assessment upon the adjoining lands, by virtue of the sovereign right of taxation delegated by the Legislature of the State to the local government for that purpose . . . ."

[7]"It is true that local assessments are said to be imposed on the theory that the property adjacent to the improvement receives special benefit therefrom. But this is a matter which is for the determination of the legislative authority of the state, acting through its established agencies for the government of political subdivisions, or directly by the legislature of the state, as that body may see fit."

[8]"[T]he act of the council in fixing the limitations of the assessment district [and] the act of the council in fixing the amount of the expense of the project to be borne by the city as a whole . . . are purely legislative acts of the council."

[9]"A special assessment is generally acknowledged to be a function of the taxing power . . . ."

[10]For two examples of cases in which the application of this standard has resulted in judicial nullification of a special assessment district, see *Spring Street Co.* v. *City of Los Angeles, supra,* 170 Cal. 24, especially pages 30-32, and *Harrison* v. *Board of Supervisors, supra,* 44 Cal.App.3d 852.

(1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29], and to that extent they fail to recognize the significance, from the standpoint of the proper scope of review, of the legislative character of the proceedings sought to be reviewed. For this reason we do not rely upon them in the instant case.

It is moreover clear from what we have said above that the above-cited *Strumsky* decision has no application to the instant case. We were careful to point out in *Strumsky* that the rules there announced for the judicial review of factual findings of administrative bodies were limited in application to administrative decisions of an *adjudicatory* nature and were not applicable to "actions undertaken by such an agency in its *legislative* capacity." (11 Cal.3d at p. 34, fn. 2; italics added.) Here, as we have explained, the action under review is of a peculiarly legislative character, and the appropriate scope of review is firmly rooted in that consideration.

In light of all of the foregoing, we conclude that in the case at bench the appropriate scope of review, which we distill from the early decisions of this court referred to above, may be stated as follows: A special assessment finally confirmed by a local legislative body in accordance with applicable law will not be set aside by the courts unless it clearly appears on the face of the record before that body, or from facts which may be judicially noticed, that the assessment as finally confirmed is not proportional to the benefits to be bestowed on the properties to be assessed or that no benefits will accrue to such properties.

It is this standard which we now proceed to apply to the case before us.

## II

It is contended on various grounds that the assessment district in question is void because the Town failed to follow proper statutory authority in creating it.

■ First it is urged that the creation of sewer assessment districts is not governed by the general provisions of the Municipal Improvement Act of 1913 (§ 10000 et seq.) because statutes with specific provision for improvements of this type (Sewer Right of Way Law of 1921 (Gov. Code, § 39000 et seq.) and Community Facilities Law of 1911 (Health & Saf. Code, § 4600 et seq.)) are controlling with respect to this type of improvement. It is clear, however, that the 1913 act provides specific

authority in this respect. Section 10102 of the act allows the legislative body of a municipality to "acquire or install any or all of the works and improvements mentioned in the Improvement Act of 1911" (§ 5000 et seq.) and section 5101, subdivision (c) specifically lists sewer works among the kinds of improvements which may be acquired or installed.[11] Neither of the two acts cited by plaintiffs contains any indication that their provisions are to be the exclusive means by which the legislative body of a local government may proceed in this area.

In summary, although the bewildering array of acts governing special assessments in general and sewer improvements in particular, each with its own distinctive scheme of procedure, might well benefit from a comprehensive legislative reexamination with a view to simplification and unification, we find nothing in the present cluster of statutes which would preclude a local legislative body from proceeding in this area under any of the available acts, including the Municipal Improvement Act of 1913.[12]

■ It is further asserted that even if it was proper to proceed in this case under the Municipal Improvement Act of 1913, the Town failed to comply with the provisions of section 10204 of that act in that the report upon which it based its action did not contain "plans and specifications of the proposed improvement." However, subdivision (a) of the indicated section requires plans and specifications only "if the improvement is not already installed." Here the contemplated "improvement,"[13] as indicated by the resolution of intention, is "[t]he acquisition of capacity and disposal rights and the right of service and use in sanitary sewerage collection, transmission, treatment, outfall and disposal facilities of the City of Palo Alto on behalf of the properties within the proposed assessment district" and [t]he acquisition of all rights, lands, and

---

[11]Although there is clearly some difference between the acquisition or installation of sewer works and the acquisition of capacity rights in sewer systems belonging to others, section 10010, by defining "acquisition" to include capacity rights, clearly contemplates that the 1913 act may be utilized for this purpose.

[12]What we have said here provides an ample answer to plaintiffs' contention that the council should have proceeded in this case under section 38902 of the Government Code, dealing with annual sewer service standby or immediate availability charges.

[13]Although an "improvement" is defined by section 10002 to include "all work and improvements authorized to be done under this division which are for a public purpose or which are necessary or incidental to a public purpose," chapter 2 of the act, entitled "improvements authorized" includes sections dealing with acquisitions of existing facilities. (See especially § 10101.) We therefore conclude that "improvements" can include "acquisitions."

easements and the performance of all work auxiliary to any of the above necessary to complete the same." This "improvement," being essentially the acquisition of rights in existing facilities, is "already installed" within the meaning of section 10204, and therefore no plans and specifications were necessary.

## III

■ It is next urged that the trial court erred when it concluded that the question of the validity of Resolution No. 458 was moot because that resolution had been rescinded by the Town council before trial. The subject resolution, adopted in 1968 about the time of the Palo Alto contract, announced a policy of the council to restrict the makeup of subsequent assessment districts to include only those properties whose owners wished to be included therein—i.e., properties whose owners wished to have sewer service. Although this resolution was, as plaintiffs assert, formally rescinded shortly before trial, this was entirely within the proper authority of the council. "Any rule that the city council might promulgate adopting a policy regarding improvement . . . may be repealed at the pleasure of the council." (*Blake* v. *City of Eureka, supra,* 201 Cal. 643, 653.) Moreover, the resolution had previously been rescinded in effect by undertaking action inconsistent with it in establishing the district here in question. (*Id.,* at pp. 653-654.) Accordingly, any question concerning its validity was clearly moot, and the trial court was therefore correct in refusing to consider it. We do the same, declining plaintiffs' invitation to render an advisory opinion on the validity of the now-rescinded resolution in order to prevent any future readoption thereof.

## IV

■ Finally it is urged that the trial court erred in upholding the Town council's determinations relative to benefits to accrue to the properties assessed. Although several contentions are advanced on this point, their common substance is as follows: The record before the trial court, which included the engineer's report and testimony,[14] the com-

---

[14]We reject as wholly without support in the record the plaintiffs' contention that it was error for the council and the trial court to base their determinations exclusively on the Town engineer's report. In the first place, the engineer not only submitted to the council the report contemplated by sections 10203 and 10204 but he also gave testimony at the meeting of August 2, 1971. Secondly, there is absolutely nothing in the record to indicate that the trial court relied exclusively on the engineer's report in reaching its conclusion that the determination of the council as to benefit "were supported by

ments of the individual council members, and the statements of the protesting owners, clearly indicates that any benefits to be gained by the district in the nature of acquired capacity rights in the Palo Alto system were already gained with the execution of the 1968 agreement, and the district here established is simply a means for the Town to meet its monetary obligations under that agreement. No new benefits, it is asserted, presently accrue as a result of the establishment of the district; no specific plans have been made for the development of collection facilities which would allow the properties assessed to take advantage of the capacity rights which they acquire, and the amount presently assessed will in no way go to pay for the development of such facilities. In light of these factors, which clearly appear on the record before the court, it is urged that the assessment must be held invalid because, in the words of the leading case above discussed, the court "can plainly see from the face of the record . . . that the assessment [as] finally confirmed is not proportional to the benefits [and] no benefits could accrue to the property assessed." (*Larsen* v. *San Francisco, supra,* 182 Cal. 1, 15.)

While we agree with plaintiffs' characterization of the record, we do not agree that the situation thus revealed is such that a judicial determination of invalidity must follow. In the first place, the fact that the benefit to the assessed property accrued prior in time to the establishment of the assessment district does not compel the conclusion that the assessment must fail. So long as special benefit to the property assessed resulted from the expenditure of public funds, we see no reason why the public entity should be foreclosed from looking to those so benefited from shouldering all or a part of the cost—especially in the context of a proceeding in which public hearing is required by law. (Cf. *Wagner* v. *Baltimore* (1915) 239 U.S. 207, 217 [60 L.Ed. 230, 236, 36 S.Ct. 66].)

Secondly, we cannot say that the Town council lacked any substantial basis for its determination that special benefit to the properties assessed did in fact result from the acquisition here in question. The Town engineer, in his testimony before the council, stated the matter thus: "In summary, it is my opinion that the proper development of the lands within the proposed assessment district and the public convenience and welfare necessitates the acquisition of the capacity rights and rights of service and use contemplated in the project. The value and desirability

---

substantial evidence educed [*sic*] before it at the hearing of August 2, 1971." In light of these factors we decline to address ourselves to the contention sought to be raised.

of these lands will depend, to a great extent, on the acquisitions, as contemplated, for the future needs of the area. [¶] In my opinion, each parcel assessed will receive an enhancement in value in excess of the proposed assessment against it. Each parcel of property will receive a special benefit by the ensuring to it of such capacity rights and rights of service and use in order that a modern, efficient and publicly owned and operated sewer system will become available to the properties when required." On this basis[15] the council was warranted in concluding that the properties assessed had acquired a valuable right: the right to capacity in and use of a contemplated sewage treatment and disposal system. The fact that collectors are not presently in existence and in fact have not yet reached the planning state does not detract from the legislative judgment that such facilities will be necessary in the foreseeable future and that a necessary prerequisite to their installation is the acquisition of capacity rights in the Palo Alto system. (Cf. *Valley Farms Co.* v. *Westchester* (1923) 261 U.S. 155, 164 [67 L.Ed. 585, 590, 43 S.Ct. 261]; see also *In re East Bay etc. Water Bonds of 1925* (1925) 196 Cal. 725, 750-751 [239 P. 38].)

In summary, we hold that the record fails to disclose that the assessment in question, as finally confirmed, was not proportional to the benefits bestowed on the properties assessed or that no benefits accrued to such properties. In our view, the trial court properly upheld the formation of Sanitary Sewer Assessment District No. 9.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Clark, J., and Richardson, J., concurred.

---

[15]It appears that the council, in according significant weight to the views of the Town engineer in the matter of special benefits, was acting in a manner expressly contemplated by the statutory scheme. Section 10203 provides that the legislative body in its resolution of intention "shall refer the proposed improvement to the board, commission, or officer of the municipality having charge and control of the construction of public improvements of the kind described in the resolution, *or to the city engineer*," or to another municipal entity or "competent person employed by the municipality for the purpose," to prepare a report in writing. (Italics added.) Section 10204, subdivision (e), expressly indicates that the report should include "[a] proposed assessment of the total amount of the cost and expenses of the proposed improvement upon the several subdivisions of land in the district in proportion to the estimated benefits to be received by such subdivisions, respectively, from the improvement." Clearly these sections indicate that the municipal engineer is among those thought by the Legislature to possess significant expertise in determining the presence and extent of special benefit.