[Civ. No. 39651. First Dist., Div. Three. Apr. 14, 1977.]

DEL KENNEDY et al., Plaintiffs and Appellants, v.
CITY OF UKIAH et al., Defendants and Respondents.

548

COUNSEL

Dennis B. Kavanagh for Plaintiffs and Appellants.

Randall A. Hays, City Attorney, for Defendants and Respondents.

OPINION

SCOTT, J.—Del Kennedy and Golden State Mobilehome Owners League appeal from a judgment denying their petition for writ of mandate. Appellants sought to enjoin the enforcement of sewer and water service assessments imposed by the City of Ukiah upon mobile homes and other multiple units within the city.

On August 1, 1973, at a regularly scheduled meeting, the Ukiah city council adopted two resolutions, the validity of which is contested by appellants. The first resolution established a monthly sewer service charge of $3.25 for "each dwelling or family unit (including mobile homes, apartments and similar units)." The second resolution established a new water rate schedule based upon meter size, and in addition, "in the case of multiple dwelling units on one service (master meter)" imposed a charge of "$2.50 for each unit in excess of one." A dwelling unit is defined as "a. a house, b. an apartment (including motels on weekly or monthly rental), c. parts of multiple dwelling units (duplex, triplex, quadplex), d. a trailer space in a court or on a separate lot." These resolutions were passed unanimously by the three council members present. Two of the five members of the city council were absent from the meeting.

Appellants contend that these resolutions are invalid in that (1) the charges thus set constitute "standby and availability" charges which may not be instituted absent compliance with statutory notice and hearing requirements; (2) the resolutions deprived appellants of equal protection of the laws; and (3) the sewer rate must be set by ordinance, not by resolution, and further, it must be passed by a two-thirds vote as required by statute.

The court below found that the sewer and water service charges were properly adopted pursuant to appropriate sections of the municipal ordinance permitting the setting of actual rates by resolution. The court further found that the water and sewer service fees were not standby charges, but were charges for services actually provided and used.

I. . Appellants contend that the sewer service rates set by the city council via resolution are invalid in that respondents failed to comply with the procedural requisites of Health and Safety Code section 5471. Section 5471 authorizes the legislative body of any entity to prescribe, revise and collect sewer service fees and rates by an ordinance approved by a two-thirds vote of its members. Here the sewer service rate was fixed by resolution upon a three-fifths vote of the city council. Appellants assert that the provisions of section 5471 are mandatory, and provide the only means for revising sewer system rates. Respondents counter that Health and Safety Code section 5471 represents only one method of establishing or revising sewer service rates, and that there are various alternative procedures provided by law.

 The Legislature has set forth a variety of alternative methods for the establishment, maintenance and operation of municipal sewer systems. These include the Municipal Improvement Act of 1913, the Improvement Bond Act of 1915, the Community Facilities Law of 1911, the Revenue Bond Law of 1941, and the sewer revenue bonds provisions of the Health and Safety Code. (Sts. & Hy. Code, § 10000 et seq.; Sts. & Hy. Code, § 8500 et seq.; Health & Saf. Code, § 4600 et seq.; Gov. Code, § 54300 et seq.; Health & Saf. Code, § 4950 et seq.) In referring to these various acts, the court in *Dawson* v. *Town of Los Altos Hills* (1976) 16 Cal.3d 676, 686 [129 Cal.Rptr. 97, 547 P.2d 1377], stated: "In summary, although the bewildering array of acts governing special assessments in general and sewer improvements in particular, each with its own distinctive scheme of procedure, might well benefit from a comprehensive legislative reexamination with a view to simplification and unification, we find nothing in the present cluster of statutes which would preclude a local legislative body from proceeding in this area under any of the available acts. . . ."

■ The City of Ukiah financed and built its sewer system in accordance with the Revenue Bond Law of 1941. (Gov. Code, § 54300 et seq.) Pursuant to that act, in 1957 the city authorized the issuance of revenue bonds to construct, operate and maintain a sanitary sewer system. An outstanding indebtedness on the bonds issued pursuant to such authorization runs until 1987. The Revenue Bond Law of 1941 provides that a city "may prescribe, revise, and collect charges for the services, facilities, or water furnished by the enterprise." (Gov. Code, §§ 54307, 54344.) Section 54354 provides that the city may declare "in the *resolution or ordinance*" prescribing such charges that delinquent charges shall be a lien upon the real property served. This section clearly implies that the charges can be set by resolution or ordinance. ■ It is conceded that the notice and hearing requirements of section 54354.5 were not followed by respondents. However, since the resolution here did not declare the delinquent charges to be a lien, it was unnecessary for the council to give notice and provide a hearing.

Government Code section 36810 provides that a majority of the council constitutes a quorum for the transaction of business. ■ When a city council consists of five members, the favorable vote of a majority of the quorum consisting of three members is necessary to adopt an ordinance or resolution. (*Saks & Co.* v. *City of Beverly Hills* (1951) 107 Cal.App.2d 260 [237 P.2d 32].) ■ Therefore, the respondent city council here acted properly in adopting the rate-setting resolution by a three-fifths vote.[1]

■ Appellants argue that insofar as the Revenue Bond Law of 1941 conflicts with section 5471 of the Health and Safety Code, the latter should be deemed controlling. However, the Revenue Bond Law specifically provides that the powers conferred under it are in addition to the powers conferred by any other law, and that if it is inconsistent with any other law, the Revenue Bond Law shall control. (Gov. Code, §§ 54302-54303.) It may be concluded that Health and Safety Code

---

[1]Respondents contend that the municipality has the inherent right under the general police power to establish sewer rates, and that they are not restricted by the various public improvement acts in the setting of such rates, particularly when the rate established does not constitute a lien on real property. Respondents cite article XI, section 7 of the California Constitution, which provides that a "county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." Government Code section 38900 gives a city the general authority to construct and maintain sewers. In *Longridge Estates* v. *City of Los Angeles* (1960) 183 Cal.App.2d 533 [6 Cal.Rptr. 900], the court held that the power to make reasonable charges to use sewers was a proper incident of the exercise of the right to provide such sewers. In view of our holding that respondents set the rates in conformity with the Revenue Bond Law of 1941, under which the system was constructed, we need not address this additional issue.

section 5471 was intended to provide, inter alia, a method for setting and revising sewer service rates where the local entity is not proceeding under a specific revenue bond or improvement statute. Section 5471 is contained in the chapter entitled "General Provisions With Respect to Sewers." ■ It is well settled that a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates. (*English Manor Corp.* v. *Vallejo Sanitation & Flood Control Dist.* (1974) 42 Cal.App.3d 996, 1001 [117 Cal.Rptr. 315].)

■ In addition to their contention that respondents are required to comply with the ordinance and two-thirds vote requirement of Health and Safety Code section 5471, appellants assert that the city is also required to comply with the procedural requirements contained in Health and Safety Code sections 5046 and 5047. However, these hearing and notice provisions are contained in the chapter entitled "Sewer Revenue Bonds," and there is nothing in the record to suggest that the instant proceedings were instituted under that law. (See Health & Saf. Code, § 4965.)

II. Appellants contend that the $2.50 water service charge is a "standby or immediate availability charge" within the meaning of Government Code sections 38743 and 38745. It is uncontroverted that the city did not follow the procedure set forth in those sections. The city contends, as the court found, that the imposition of the charge was not for standby or immediate availability service.

■ Municipal corporations have the authority and power to establish and operate works for supplying their inhabitants with water. They also have the power to fix the rates to be charged for the sale of the water. (53 Cal.Jur.2d, Waterworks, § 55, p. 62.) The only requirement is that such rates be reasonable. (See *Boynton* v. *City of Lakeport Mun. Sewer Dist.* (1972) 28 Cal.App.3d 91, 97-98 [104 Cal.Rptr. 409, 61 A.L.R.3d 1228].) In addition to setting rates for the sale of water, a city is authorized by statute to fix an annual water service standby or immediate availability charge to be applied on an area, frontage or parcel basis. Such charge may not exceed $10 per acre per month on an area or frontage basis, or $5 per month for a parcel or frontage of less than an acre. (Gov. Code, § 38743.)

The code does not define the terms "water service standby" or "immediate availability," and research has disclosed no California case law interpreting these terms. A New Mexico case has defined "standby" as a charge or assessment levied against property adjacent to a water main but not connected to it. The utility remains "standby," ready to serve the property, and hence the property is benefited. (*Chapman* v. *City of Albuquerque* (1959) 65 N.M. 228 [335 P.2d 558, 561].) Pennsylvania uses the term "ready to serve," and interprets it as follows: "In effect, it is a minimum payment demanded of patrons who desire to be placed in position to take advantage of the service at their convenience, whether actually using the water or not." (*Central Iron & Steel Co.* v. *Harrisburg* (1921) 271 Pa. 340 [114 A. 258, 260].) The only distinction between the terms "standby" and "immediately available" appears to be the degree of availability of the water facilities as it affects the basis for determining the schedule of charges that can be imposed pursuant to Government Code section 38743 et seq. Standby and availability charges are fees exacted for the benefit which accrues to property by virtue of having water available to it, even though the water might not actually be used at the present time. ■ Here, the charge is not a "standby" or "immediate availability" charge within this definition, in that the charge is not imposed on an acreage or parcel basis and is not related to "available" or "standby" water service. Rather, it appears to be a surcharge for water use imposed on multiple dwelling units having a master meter. Put another way, the water service is not "standing by" or "immediately available" to be connected to the property to be benefited; it is in fact providing the benefit.

Appellants urge that the $2.50 charge here is made regardless of whether or not a tenant uses any water during the month, and the charge therefore is not levied for water used, but for the privilege of having water service *immediately available,* whether or not actually used. This interpretation would of necessity subject all water connections to the standby and immediate availability provisions of the Government Code. This is clearly not the legislative intent.

III. ■ Appellants next argue that the monthly water charge, insofar as it applies only to tenants in multiple unit dwellings, constitutes a violation of the equal protection clause of the Fourteenth Amendment. It is asserted that "there is no rational basis" for the "assessment of a fee against a class of people who reside in multiple dwellings." Appellants contend that they are being unfairly singled out by the imposition of the $2.50 fee, because this charge does not apply to single family residences. It must be noted, however, that the challenged fee applies only to multiple unit dwellings on a master meter. But for the imposition of this

charge, appellants and other multiple dwelling unit residents would escape the imposition of a monthly minimum charge almost entirely. On this basis, it may be concluded that the imposition of the $2.50 monthly water charge does not constitute a denial of equal protection, but rather eliminates the past practice of discriminating against single family residences.

IV. Appellants further argue that the city's water rates are excessive and unreasonable in that they provide revenue substantially in excess of that needed for operating, maintenance and construction expenses. In this connection, appellants assert that the City of Ukiah made a $50,000 profit from the operation of its water supply system during the years 1973-1974 and 1974-1975, and that these profits were transferred out of the water fund into the general fund. It is contended that such practice is unlawful under the Supreme Court's decision in *City of Madera* v. *Black* (1919) 181 Cal. 306 [184 P. 397], wherein the court held that a city had no power to operate sewers for the purpose of obtaining revenue or profit therefrom. Appellants urge that the principle enunciated in *Madera* is equally applicable to the authority of general law cities in the operation of their water systems.

This issue was not raised in the pleadings nor was it mentioned in appellants' trial briefs. The trial court specifically stated that it would make no determination concerning transfer of revenue to the general fund of the City of Ukiah since this issue was not before it. Appellants now seek to have the issue determined by this court. However, it is well settled that an appellate court will not consider points not raised below. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 276-277, pp. 4264-4266; see also *Knapp* v. *City of Newport Beach* (1960) 186 Cal.App.2d 669, 681 [9 Cal.Rptr. 90].)

Judgment is affirmed.

Draper, P. J., and Good, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.