55 Cal.Rptr.3d 184 (2007)
147 Cal.App.4th 1116
Jimmie D. BONANDER et al., Plaintiffs and Appellants,
v.
TOWN OF TIBURON et al., Defendants and Respondents.
No. A112539.
Court of Appeal of California, First District, Division Three.
January 31, 2007.
*188 Frank I. Mulberg, Mill Valley, and Brett D. Mulberg for Plaintiffs and Appellants.
McDonough Holland & Allen PC, Thomas R. Curry, Kevin D. Siegel, Oakland, Ann R. Danforth, Town Attorney, for Defendants and Respondents.
McGUINESS, P.J.
This appeal presents the question whether a lawsuit challenging a special assessment levied under the Municipal Improvement Act of 1913 (Sts. & Hy.Code,[1] § 10000 et seq.) for failure to comply with Proposition 218 is subject to special procedural rules applicable to "validation actions." Appellants are property owners who sought to invalidate a special assessment imposed by respondent Town of Tiburon (Town) to cover the costs of moving overhead utility lines underground. Appellants claimed the special assessment violates Proposition 218 because, among other things, the amount of the assessment exceeds any "special benefits" conferred on their properties. The trial court dismissed the action because appellants failed to publish notice of the action and file proof of publication within 60 days after the filing of the complaint, a procedural requirement that must be satisfied to confer jurisdiction in a validation action filed by an interested person. (See Code Civ. Proc, § 863.)
We conclude that appellants' lawsuit constitutes a validation action subject to the procedural requirements governing such actions contained in section 860 et seq. of the Code of Civil Procedure. We also conclude the trial court did not abuse its discretion in finding no good cause for appellants' failure to publish notice of their action within the required time period. Accordingly, we affirm the judgment.

STATUTORY AND CONSTITUTIONAL FRAMEWORK
Before describing the factual and procedural history of the dispute giving rise to this appeal, we provide an overview of the relevant legal framework pertaining to the Municipal Improvement Act of 1913, Proposition 218, and validation actions.

1. The Municipal Improvement Act of 1913
"The use of the special or beneficial assessment district as a device for financing *189 the cost of public improvements has a long pedigree in the history of public finance in the United States. [Citation.] As one law review article on the use of benefit assessment districts has noted, in the 19th century, `local jurisdictions levied benefit assessments on property owners to finance street improvements abutting the owners' properties. Although the community at large benefited from street improvements in the city, those property owners along the new or improved streets received special benefits that enhanced their property values and thus justified payment of benefit assessments. . . . As the need for public improvements at the local level increased, local governments expanded the application of benefit assessments to other types of improvements.' [Citation.]" (Not About Water Com. v. Board of Supervisors (2002) 95 Cal. App.4th 982, 991, 116 Cal.Rptr.2d 526 (Not About Water).)
A special assessment differs in important respects from a tax. Unlike a tax, which is levied without regard to whether the property or person subject to the tax receives a special benefit not enjoyed by others (Knox v. City of Orland (1992) 4 Cal.4th 132, 142, 14 Cal.Rptr.2d 159, 841 P.2d 144), "the essential feature of the special assessment is that the public improvement financed through it confers a special benefit on the property assessed beyond that conferred generally. [Citations.]" (Southern Cal. Rapid Transit Dist. v. Bolen (1992) 1 Cal.4th 654, 661, 3 Cal.Rptr.2d 843, 822 P.2d 875.) "[A] special assessment is `levied against real property particularly and directly benefited by a local improvement in order to pay the cost of that improvement.' [Citation.]" (Knox v. City of Orland, supra, 4 Cal.4th at p. 142, 14 Cal.Rptr.2d 159, 841 P.2d 144.)
The Municipal Improvement Act of 1913 (hereafter 1913 Act), codified at section 10000 et seq., is one of many statutory schemes authorizing public agencies to impose special assessments to recoup the costs of public improvements that benefit particular properties. (See, e.g., § 5000 et seq. [Improvement Act of 1911], § 18000 et seq. [Street Lighting Act of 1919], § 22500 et seq. [Landscaping and Lighting Act of 1972].) The 1913 Act authorizes a municipality to install a variety of improvements in or along its streets, including water lines, utility lines and poles, and "[a]ny other works, utility, or appliances necessary or convenient for providing any other service." (§ 10100, subd. (e).) The 1913 Act specifically incorporates provisions of the Improvement Act of 1911 (§ 5000 et seq.) relating to the conversion of overhead utility lines to underground locations. (§ 10102.1.)
The 1913 Act establishes a multi-step process for municipalities to create assessment districts. (See generally Dawson v. Town of Los Altos Hills (1976) 16 Cal.3d 676, 683, 129 Cal.Rptr. 97, 547 P.2d 1377 [describing pre-Proposition 218 process for establishing assessment district under 1913 Act].) The first step is the adoption by the local government's legislative body of a "resolution of intention" describing the proposed improvements, specifying the exterior boundaries of the proposed district, and providing for the issuance of improvements bonds to the extent the project is to be financed by bonds. (§ 10200.) Following the preparation of a detailed report (§§ 10203, 10204), the legislative body must follow certain notice, hearing, and protest requirements. (§ 10301.) Upon confirmation of a proposed assessment, the legislative body orders the improvements to be made and orders an assessment to be levied upon the affected parcels. (§ 10312, subd. (a).) Bonds may be issued to finance the cost of the improvements. (§ 10600.)
*190 Any challenge to the validity of an assessment levied under the 1913 Act must be filed within 30 days after the assessment is levied. (§ 10400.) The period for challenging the assessment is brief in order to prevent the possibility of attacks on the validity of assessments years after they are levied, to insure the marketability of assessment bonds at the time they are sold. (See Allis-Chalmers v. City of Oxnard (1980) 105 Cal.App.3d 876, 883, 165 Cal.Rptr. 128.)

2. Proposition 218
The voters approved Proposition 218, the Right to Vote on Taxes Act, in November 1996. (Apartment Assn. of Los Angeles County, Inc. v. City of Los Angeles (2001) 24 Cal.4th 830, 835, 102 Cal.Rptr.2d 719, 14 P.3d 930.) Proposition 218 can best be understood as the progeny of Proposition 13, the landmark initiative measure adopted in 1978 with the purpose of cutting local property taxes. (Howard Jarvis Taxpayers Assn. v. City of Riverside (1999) 73 Cal.App.4th 679, 681, 86 Cal.Rptr.2d 592.) One of the principal provisions of Proposition 13 "limited ad valorem property taxes to 1 percent of a property's assessed valuation and limited increases in the assessed valuation to 2 percent per year unless and until the property changed hands. [Citation.] [¶] To prevent local governments from subverting its limitations, Proposition 13 also prohibited counties, cities, and special districts from enacting any special tax without a two-thirds vote of the electorate. [Citations.]" (Howard Jarvis Taxpayers Assn. v. City of Riverside, supra, 73 Cal.App.4th at pp. 681-682, 86 Cal.Rptr.2d 592.)
Local governments found a way to get around Proposition 13's limitations, owing in part to a determination that a "special assessment" was not a "special tax" within the meaning of Proposition 13. (See Knox v. City of Orland, supra, 4 Cal.4th at p. 141, 14 Cal.Rptr.2d 159, 841 P.2d 144.) As a consequence, a special assessment could be imposed without the two-thirds vote required by Proposition 13. (Howard Jarvis Taxpayers Assn. v. City of Riverside, supra, 73 Cal.App.4th at p. 682, 86 Cal. Rptr.2d 592.) The ballot arguments in favor of Proposition 218 declared that politicians had exploited this loophole by calling taxes "assessments" and "fees" that could be enacted without the consent of the voters. (Apartment Assn. of Los Angeles v. City of Los Angeles, supra, 24 Cal.4th at p. 839, 102 Cal.Rptr.2d 719, 14 P.3d 930.) Proponents of Proposition 218 claimed that "[s]pecial districts [had] increased assessments by over 2400% over 15 years." (Ibid.)
To address these concerns, the electorate approved Proposition 218, adding articles XIII C and XIII D to the California Constitution. (Howard Jarvis Taxpayers Assn. v. City of Riverside, supra, 73 Cal. App.4th at p. 682, 86 Cal.Rptr.2d 592.) "Proposition 218 allows only four types of local property taxes: (1) an ad valorem property tax; (2) a special tax; (3) an assessment; and (4) a fee or charge. [Citations.] It buttresses Proposition 13's limitations on ad valorem property taxes and special taxes by placing analogous restrictions on assessments, fees, and charges." (Ibid.)
Proposition 218 establishes certain procedures and requirements applicable to all assessments. (Cal. Const., art. XIII D, § 4.) An "assessment" under Proposition 218 means "any levy or charge upon real property by an agency for a special benefit conferred upon the real property." (Cal. Const., art. XIII D, § 2, subd. (b).) "Special assessments" and "benefit assessments" are both encompassed within the term "assessment" as used in Proposition 218. (Ibid.) "Special benefit" is defined as *191 "a particular and distinct benefit over and above general benefits conferred on real property located in the district or to the public at large. General enhancement of property value does not constitute `special benefit."' (Cal. Const., art. XIII D, § 2, subd. (i).)
Proposition 218 imposes certain notice and hearing requirements before a public agency may adopt a special assessment. (Cal. Const., art. XIII D, § 4, subds. (c), (d) & (e).) Also, an assessment may only be imposed if (1) it is supported by an engineer's report (Cal. Const., art. XIII D, § 4, subd. (b)), (2) it does not exceed the reasonable cost of the proportionate special benefit conferred on each affected parcel (Cal. Const., art. XIII D, § 4, subds. (a) & (f)), and (3) it receives a vote of at least half of the owners of affected parcels, weighted "according to the proportional financial obligation of the affected property." (Cal. Const., art. XIII D, § 4, subd. (e).)
The procedural limitations contained in Proposition 218 apply to the 1913 Act as well as other statutory schemes authorizing a local government to levy special assessments. In order to conform the notice, hearing, and other requirements of the 1913 Act with the mandates of Proposition 218 and the statutory provisions enacted to implement Proposition 218 (Gov. Code, § 53750 et seq.), legislation passed in 2003 amended or repealed various provisions of the 1913 Act.[2] (Stats.2003, ch. 194, § 21.)
In addition to specifying procedures that must be followed by a local government before it may levy a special assessment, Proposition 218 also addresses who bears the burden of demonstrating that the amount of an assessment is justified by the special benefits enjoyed by the affected property. (Cal. Const., art. XIII D, § 4, subd. (f).)

3. Validation Actions
A "validation action," also sometimes referred to as a "validating proceeding," is an action that permits a public agency to establish that certain actions it may take are valid and immune from further attack. (See Code Civ. Proc., § 860 et seq.; Kaatz v. City of Seaside (2006) 143 Cal.App.4th 13, 19, 29-30, 49 Cal.Rptr.3d 95 (Kaatz).) The procedural framework for validation actions is found in Chapter 9 of Part 2, Title 10 of the Code of Civil Procedure, encompassing sections 860 through 870.5 (hereafter the validation statutes).
A validation action is "in the nature of a proceeding in rem." (Code Civ. Proc., § 860.) A public agency may file a validation action to determine the validity of any matter brought within the scope of the validation statutes. (Ibid.) Alternatively, any "interested person" may bring a validation action to determine the validity of the matter. (Id., § 863.) A validation action initiated by an "interested person" is sometimes referred to as a "reverse validation action."[3] (Kaatz, supra, 143 Cal. App.4th at p. 30, fn. 16, 49 Cal.Rptr.3d 95.)
*192 Under the validation statutes, "[t]he public agency may validate its action by either active or passive means. It may initiate an action in rem to establish the validity of the matter. [Citation.] Alternatively, the agency may do nothing, and if no `interested person' brings suit to determine the validity of the public agency's action within 60 days [citation] the action is deemed valid." (Kaatz, supra, 143 Cal. App.4th at p. 19, 49 Cal.Rptr.3d 95.) Thus, although section 863 of the Code of Civil Procedure states that an interested person "may" file a validation action, the failure to do so results in being "forever barred from contesting the validity of the agency's action in a court of law." (City of Ontario v. Superior Court (1970) 2 Cal.3d 335, 341, 85 Cal.Rptr. 149, 466 P.2d 693 (City of Ontario).) "The validation procedure is intended to provide a uniform mechanism for prompt resolution of the validity of a public agency's actions. [Citation.] The procedure `assures due process notice to all interested persons' and settles the validity of a matter `once and for all by a single lawsuit' [Citation.]." (Katz v. Campbell Union High School Dist. (2006) 144 Cal.App.4th 1024, 1028, 50 Cal.Rptr.3d 839 (Katz).)
Validation actions are subject to special procedural rules, including the requirement that the summons must be directed to "all persons interested" in the matter and must contain a detailed summary of the matter that the public agency or an interested person seeks to validate. (Code Civ. Proc, § 861.1.) In addition, when an interested person files a validation action, that person must complete service by publication in a newspaper of general circulation `and file a proof of publication within 60 days of the filing of the complaint, unless good cause excuses the failure to comply. (Id., §§ 861, 863.) If an interested person who files a validation action fails to comply with this requirement and offers no showing of good cause excusing this failure, the court lacks jurisdiction to hear the matter and the action "shall be forthwith dismissed." (Id., § 863; Community Redevelopment Agency v. Superior Court (1967) 248 Cal.App.2d 164, 179-180, 56 Cal.Rptr. 201 (Community Redevelopment).)

FACTUAL AND PROCEDURAL BACKGROUND
As of May 2005, appellants Jimmie D. Bonander, Jean Bonander, Shelley Mulberg, and Frank Mulberg owned real property in the Town. Their properties were within the border of an assessment district known as the Del Mar Valley Utility Undergrounding Assessment District (District).
The history of the District dates back to at least May 2003, when property owners petitioned the Town Council to form an assessment district for the purpose of placing overhead utility lines underground. In June 2003, the Town adopted a resolution declaring its intention to form an assessment district to finance the undergrounding of utilities. The District was to be formed under the authority of the 1913 Act and article XIII D of the California Constitution, which was added by Proposition 218.
A final engineer's report explained that the undergrounding project would provide aesthetic, service reliability, and safety benefits to the affected properties. Appellants, along with other property owners, objected to the proposed assessment and sought to be excluded from the District. The proposed assessment for each of appellants' properties was $31,146.62.
*193 The Town held a public hearing on May 18, 2005, to hear testimony and protests relating to the proposed District. At the close of the hearing, the Town tallied the votes of affected property owners. By a margin of 71% to 29%, the property owners' vote favored creation of the District. Because there was no majority protest against the proposed District, the Town Council voted unanimously to adopt Resolution No. 21-2005 approving the final engineer's report, creating the District, and approving the assessments.
On June 16, 2005, appellants filed a complaint on behalf of themselves and "a number of their neighbors similarly situated" seeking to invalidate the special assessment on their properties. Styled a "Petition for Writ of Administrative Mandamus (CCP § 1094.5) or Mandate (CCP § 1085) and Complaint for Declaratory and Injunctive Relief," the complaint contained four causes of action, including three causes of action for either an administrative or traditional writ of mandate and one cause of action seeking declaratory relief. Both the summons and the complaint named only the Town, the Town Council, and "Does 1 through 20" as defendants and respondents (collectively referred to herein as the Town). The summons was not directed to all persons interested in the subject matter of the complaint.
In their complaint, appellants asserted that the amount of the assessment on each of their properties violated Proposition 218 because it exceeded the reasonable cost of the proportional special benefit conferred on their respective parcels. They alleged that the Town acted in excess of its jurisdiction by imposing an assessment initiated by an inadequate petition. Appellants further alleged that the Town adopted "an inadequate Resolution of Intention," illegally formed the District boundaries through gerrymandering and tainted voting, and illegally formed zones within the District. They also Claimed there was no substantial evidence to support a determination that placing overhead utilities underground provided any special benefit to their properties. Appellants alleged the Town Council abused its discretion by refusing to consider evidence that the District as created violated the California Constitution, the 1913 Act, and the Town's own published undergrounding policies.
In their prayer for relief, appellants sought to invalidate the Town's approval of the District. Specifically, they sought a peremptory writ of mandate ordering the Town to set aside Resolution No. 21-2005, which approved the assessments and created the District. They also sought a preliminary and permanent injunction enjoining the Town from enforcing Resolution No. 21-2005, and they requested "a declaration that Resolution No. 21-2005 . . . including the assessment noticed May 27, 2005, is void and invalid. . . ."
On June 17, 2005, appellants had the summons and complaint personally served on a person authorized to accept service on behalf of the Town. On July 11, 2005, the trial court granted appellant's ex parte application for a temporary restraining order. The court's order provided that during the pendency of the action the Town could not take any action with respect to appellants' properties to give effect to Resolution 21-2005. The order also set out a briefing schedule on the merits of the complaint, with a hearing set in October 2005.
On August 2, 2005, the Town filed an answer to the complaint. As an affirmative defense to the complaint, the Town alleged that appellants "were required to, but failed to, comply with the statutory requirement for pursuing this action, including without limitation Code of Civil *194 Procedure section 860 et seq. [i.e., the validation statutes]."
According to a declaration filed in the trial court, appellants' counsel "discovered" the possible applicability of the validation statutes on Sunday, August 14, 2005, as counsel was preparing appellants' opening trial court brief. The following day, August 15, 2005, was the sixtieth day after the filing of the complaint. Appellants claim they made an ex parte appearance on that date before the trial court, which purportedly granted them a two-day extension to comply with the validation statutes.[4]
In an apparent attempt to comply with the requirements of the validation statutes, appellants mailed the original summons to the property owners in the District on August 15, 2005. At the bottom on the summons (directed only to the Town, the Town Council, and Does 1 through 20), appellants added handwriting stating: "8/15/05  To All Interested Parties [¶] See Notice Attached to Summons." A notice attached to the summons was directed to "All PERSONS INTERESTED IN THE MATTER OF THE DEL MAR UTILITY UNDER GROUNDING DISTRICT." The notice referred to appellants' complaint against the Town and stated in relevant part, "All Persons Interested in the matter of determining the validity or invalidity of said Assessment District under Proposition 218 and Article 13D, section 4 of the California Constitution, which is the subject of this lawsuit, as it relates to determination if the assessment levy apportionment formula adopted by such Assessment District results in assessment amounts per parcel that exceed the special benefits attributable to each parcel may file a written Answer to the Complaint." Appellants filed a proof of service on August 15, 2005, indicating that the original summons and the notice prepared by appellants had been served by mail on the property owners.
Appellants appeared ex parte before the trial court on August 17, 2005, the sixty-second day after the complaint was filed. Appellants sought an order amending the summons to comply with the validation statutes, including adding "all persons interested" to the summons. Appellants did not concede the validation statutes were applicable but merely claimed the purpose of the request was "for protective purposes in an abundance of caution." The trial court issued an order granting leave to file the amended summons and attached notice, which was substantially the same as the notice served by mail on affected property owners two days earlier. The amended summons was directed to the Town and "all persons interested in matter of Del Mar Utility Undrgrdg Assmt District." The court's order also directed the clerk of the court to authorize issuance of the amended summons and notice. Notably, the court's order was limited to authorizing issuance of the amended summons. It did not extend the time for publishing the summons or complying with the validation statutes, nor did it contain any finding there was good cause to excuse appellants' noncompliance with the validation statutes.
Appellants proceeded to publish the amended summons and notice of lawsuit in the Marin Independent Journal newspaper once a week for four consecutive weeks, beginning with the edition on August 19, 2005. On September 9,2005, 85 days after the action was commenced, appellants filed *195 a proof of publication of the amended summons.
Appellants filed their opening brief on the merits of the complaint on August 24, 2005. The Town filed its opposition on September 23, 2005. The same day, the Town also filed a separate notice of motion and motion to dismiss for appellants' failure to comply with certain procedures governing validation actions found in sections 861, 861.1, and 863 of the Code of Civil Procedure. The Town provided points and authorities supporting the motion to dismiss in the brief addressing the merits of appellants' complaint. The Town contended that appellants' challenge to the District and the assessments constituted a validation action subject to the procedural requirements of the validation statutes, including the requirement that appellants file a proof of publication within 60 days of the complaint's filing. Because appellants failed to comply with the 60-day summons publication requirement, the Town urged that the trial court was required to dismiss the action under Code of Civil Procedure section 863.
In reply, appellants contended it was unclear whether the validation statutes applied to their action, which included injunctive and declaratory relief. They claimed it is well settled than the validation statutes do not apply to actions for injunctive and declaratory relief, and that at a minimum the issue was "complex and debatable," thereby providing good cause for appellants' noncompliance with the validation statutes. Appellants also argued that they made a good faith effort to comply with the service requirements by serving all of the affected property owners by mail on the sixtieth day after the complaint was filed. In a declaration accompanying their reply, appellants claimed that due to the "complex and complicated nature" of the validation statutes, they did not believe the procedural requirements contained in the validation statutes applied to an action to "nullify an underground utility assessment district" that purportedly violates Proposition 218.
The trial court granted the Town's motion to dismiss. In its order, the court identified allegations and prayers for relief in the complaint demonstrating appellants' intention to invalidate the entire District and not just their individual assessments. The court held that under Not About Water, supra, 95 Cal.App.4th 982, 116 Cal. Rptr.2d 526, a lawsuit such as that filed by appellants was subject to the requirements found in the validation statutes. The court further found that appellants had not complied with the publication requirements of the validation statutes, stating that "even though the court allowed petitioners to attempt to resurrect their case, upon their petition, last summer, this compliance has not occurred. . . ."
The court also found an absence of good cause for appellants' failure to complete publication of the summons and to file proof of such publication within 60 days of the date the complaint was filed. The court stated: "Although an `honest and reasonable mistake of law" on a `"complex and debatable" issue' `is excusable and constitutes good cause for relief,' [citation], [appellants] point to no `complex and debatable' issue which led to their failure to comply with [Code of Civil Procedure] sections 861, 861.1, and 863." The court explained that the Not About Water case concerned claims similar to those raised by appellants under the 1913 Act and Proposition 218, and the court there held that the proceeding was a validation action subject to the requirements of the validation statutes.
The trial court entered a judgment of dismissal on November 22, 2005. Appellants timely appealed.

*196 DISCUSSION
Appellants contend the trial court erred in granting the Town's motion to dismiss, arguing that the procedural requirements of the validation statutes do not apply to a "special benefits" determination under Proposition 218. Alternatively, appellants assert that, to the extent the validation statutes apply, the trial court abused its discretion by failing to find good cause excusing appellants' failure to comply with the summons publication requirement contained in Code of Civil Procedure section 863.
Whether an interested person demonstrated good cause for failing to comply with the summons publication requirements is a question committed to the sound discretion of the trial court. (Katz, supra, 144 Cal.App.4th at p. 1031, 50 Cal. Rptr.3d 839.) Accordingly, our review of the trial court's good cause determination is governed by the deferential abuse of discretion standard. (Ibid.; see also City of Ontario, supra, 2 Cal.3d at p. 347, 85 Cal.Rptr. 149, 466 P.2d 693.) Appellate courts will rarely interfere in such determinations, and "`never unless it clearly appears that there has been a plain abuse of discretion.' [Citations.]" (City of Ontario, supra, 2 Cal.3d at p. 347, 85 Cal. Rptr. 149, 466 P.2d 693.) To establish an abuse of discretion, the complaining party must show that the challenged action constituted "a clear case of abuse" and "a miscarriage of justice." (Blank v. Kirwan (1985) 39 Cal.3d 311, 331, 216 Cal.Rptr. 718, 703 P.2d 58.) The remaining issues turn upon the interpretation and applicability of the validation statutes, various provisions of the 1913 Act, and Proposition 218. These issues present questions of law to which we apply an independent review. (Katz, supra, 144 Cal.App.4th at p. 1031, 50 Cal.Rptr.3d 839.)
As explained below, we conclude that an action challenging the validity of a special assessment imposed under the 1913 Act is governed by the validation statutes. This conclusion is unchanged by the fact that a challenge to a special assessment is premised on an asserted violation of Proposition 218. We also conclude that appellants failed to identify a "complex and debatable" issue that would constitute good cause for their failure to comply with the requirements governing validation actions.

I. Appellants Failed to Comply with the Procedural Requirements of the Validation Statutes.

A Appellants' Service by Mail of the Original Summons and their Belated Publication of the Amended Summons did not Satisfy the Publication Requirement Contained in the Validation Statutes.
The validation statutes require that a plaintiff in a reverse validation action publish the summons and file proof of that service within 60 days after commencement of the action.[5] (Code Civ. *197 Proc., § 863.) The procedural requirements of the validation statutes are strictly applied. (See County of Riverside v. Superior Court (1997) 54 Cal.App.4th 443, 451-52, 62 Cal.Rptr.2d 747 (County of Riverside).) "[S]ection 863 [of the Code of Civil Procedure] requires the publication of summons in the precise form and within the time prescribed. Unless good cause is shown by plaintiffs for their failure to comply with the requirements of that section, the court has no jurisdiction to hear their action." (Community Redevelopment, supra, 248 Cal.App.2d at pp. 179-180, 56 Cal.Rptr. 201.) Belated compliance with the statute does not confer jurisdiction to hear the matter. (Id. at p. 180, 56 Cal.Rptr. 201.)
There is little dispute but that, to the extent the validation statutes apply, appellants failed to timely comply with the requirements relating to the summons and its publication. The summons as originally issued was not directed to "all persons interested" in the action. (See Code Civ. Proc., § 861.1.) Plus, proof of service by publication was not filed within 60 days of the filing of the action. Indeed, publication of the amended summons directed to "all persons interested" did not even commence until after the sixtieth day following the filing of the complaint.
Appellants do not suggest they complied with the specific requirements of the validation statutes, but they point out they served notice by mail on all property owners within the District on the sixtieth day after the complaint was filed. Although appellants raise this issue primarily in connection with their argument concerning whether good cause exists to excuse noncompliance with the validation statutes, we address the issue here to confirm that personal service on interested persons does not confer jurisdiction under the validation statutes.
As noted above, a validation action is a proceeding in rem. (Code Civ. Proc., § 860.) "The very purpose of an in rem action is to provide a binding judgment against the world." (Planning & Conservation League v. Department of Water Resources (2000) 83 Cal.App.4th 892, 921, 100 Cal.Rptr.2d 173.) "The use of the term `jurisdiction' in this context is deceptive. Since jurisdiction is necessary over the res, not over persons, in a validation proceeding, section 861 of the Code of Civil Procedure is in essence a notice provision. Interested persons must have notice by publication of summons before the court can obtain in rem jurisdiction of the validation action." (Id. at p. 922, 100 Cal.Rptr.2d 173.)
"In the usual case, service by publication is done as a method of last resort when the defendant cannot be found even after the exercise of reasonable diligence. . . . In a validation or reverse validation action, by contrast, published notice to members of the public is the primary means of notice. Such actions involve matters of general public interest, and there is at least some reasonable expectation that potentially concerned parties will observe the notice and consider whether or not to take action on one side or the other." (County of Riverside, supra, 54 Cal.App.4th at p. 450, 62 Cal.Rptr.2d 747.)
Personal service or service by mail upon interested persons does not confer jurisdiction in a reverse validation action. (Cf. Katz, supra, 144 Cal.App.4th at p. 1032, 50 Cal.Rptr.3d 839 [jurisdiction over the parties does not confer jurisdiction over the matter].) "`The service of a summons by publication is in derogation of the common law, and in order to obtain such constructive service, the statute must be substantially complied with and its mandates observed.' [Citation.] `When *198 jurisdiction is obtained by a prescribed form of constructive notice the statutory conditions upon which the service depends must be strictly construed. Unless the statute has been complied with there is no power to render a judgment.' [Citation.]" (Community Redevelopment, supra, 248 Cal.App.2d at p. 178, 56 Cal.Rptr. 201; accord Katz, supra, 144 Cal.App.4th at pp. 1034-1035, 50 Cal.Rptr.3d 839.) Accordingly, assuming the validation statutes apply, appellants' attempt to serve notice by mail on all affected property owners did not cure their noncompliance with the summons publication requirement or confer jurisdiction on the trial court.

B. An Action to Determine the Validity of a Special Assessment under the 1913 Act is Governed by the Validation Statutes.
It is beyond dispute that appellants failed to comply with the procedural requirements applicable to validation actions. The key question is whether an action such as that filed by appellants is governed by the validation statutes. To answer this question, we turn to the history of the validation statutes.
The validation statutes were first enacted in 1961 in an attempt to standardize the procedure by which public agencies established the validity of certain actions. (City of Ontario, supra, 2 Cal.3d at p. 340, 85 Cal.Rptr. 149, 466 P.2d 693.) When the Judicial Council originally proposed adoption of the validation statutes, it explained its concern about numerous and scattered statutes authorizing actions by cities, counties, and public agencies to establish the validity of their bonds or assessments or the legality of their existence. (Ibid.) In order to provide a simple, uniform procedure governing such actions, the Judicial Council proposed the validation statutes. (Ibid.) The Judicial Council specifically warned, however, that the validation statutes would only apply when and to the extent they were made applicable by a statute relating to a particular public agency, in order to "prevent the procedure from covering matters not studied by the Council which might be less adaptable to the procedure.' [Citation.]" (Ibid.)
The principle limiting which governmental actions are subject to the validation statutes is embodied in section 860 of the Code of Civil Procedure, which states in relevant part that a public agency may bring a validation action "upon the existence of any matter which under any other law is authorized to be determined pursuant to this chapter. . . ." (Italics added.) Not all actions of a public agency are subject to validation. (Kaatz, supra, 143 Cal.App.4th at p. 19, 49 Cal.Rptr.3d 95.) Rather, we look to other statutes and the cases that have interpreted them to determine the scope of public agency actions subject to validation under the validation statutes. (Id. at p. 31, 49 Cal. Rptr.3d 95.)
Here, we need not look far to find the relevant statute. In Division 12 of the Streets and Highways Code, which contains the codification of the 1913 Act, section 10601 provides as follows: "An action to determine the validity of the assessment, bonds, contract, improvement or acquisition may be brought by the legislative body or by the contractor pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure [i.e., the validation statutes]. For such purpose an improvement or acquisition shall be deemed to be in existence upon its authorization and an assessment upon its confirmation. Notwithstanding any other provisions of law, the action authorized by this section shall not be brought by any person other than the legislative body or the contractor, nor *199 except when permitted by Section 10400 shall the action be brought after the date fixed for the beginning of work." (§ 10601.)
Although section 10601 is found in a chapter of the 1913 Act addressing "improvement bonds," it is apparent that the section has a general application to any action falling within its scope under the 1913 Act, and it specifically applies to an action to determine the validity of an "assessment." Thus, this statute constitutes the "other law" authorizing application of the validation statutes to an action by a public agency to determine the validity of an assessment under the 1913 Act.[6] (See Code Civ. Proc., § 860.)
Our analysis would not be complete without addressing the language in section 10601 limiting who may file a validation action. On its face, the statute appears to allow such actions to be filed only by the public agency and one interested person  the contractor. (§ 10601.) During oral argument in this appeal, appellants' counsel pointed out that the legislative amendment restricting the application of 10601 to the legislative body and the contractor was adopted at the same time the Legislature originally enacted the validation statutes in 1961.[7] (Compare § 10601, as amended by Stats.1961, ch. 1526, § 1, p. 3364, with former § 10601, as added by Stats.1953, ch. 192, § 4, p. 1192.) The implication is that the Legislature specifically intended to relieve interested persons other than "the contractor" from having to comply with the validation statutes in a challenge to an action taken pursuant to the 1913 Act. For reasons that follow, we conclude such an interpretation of section 10601 is insupportable.
If differing interpretations of a statute are possible, our task is to interpret it in a workable and reasonable manner. (See Bell v. Farmers Ins. Exchange (2001) 87 Cal.App.4th 805, 832, 105 Cal. Rptr.2d 59.) The interpretation urged by appellants would lead to the odd result that the procedures in litigation to determine the validity of governmental acts would vary depending upon who filed the action. Whereas a public agency and a contractor would have to publish the summons in such an action, any other interested person could simply serve the summons *200 on the public agency and any other named parties without having to comply with the publication requirements of the validation statutes. The consequence of this differential treatment would be that a lawsuit filed by a public agency or contractor would be an in rem action, the outcome of which would be conclusive and binding on everyone, whereas an action filed by any other interested person would be an in personam action that would yield a result binding only upon the parties to the litigation. Such a result is at odds with the purpose of the validation statutes, and it further suggests that challenges to an action of a public agency could be decided on a piecemeal basis through individual, in personam actions. "But the validity of a matter is not decided piecemeal. That is the reason validation action are designated as actions in rem. When any person files a validation action, the validity of the matter is decided once and for all in that action. ([Code Civ. Proc.,] § 870.)" (Katz, supra, 144 Cal.App.4th at p. 1032, 50 Cal.Rptr.3d 839.)
Section 10601 does not preclude the filing of a reverse validation action by an interested person. Reverse validation actions are authorized by section 863 of the Code of Civil Procedure, which provides that an interested party may file such an action in any case in which the public agency could have filed a validation action but did not. Thus, the relevant issue for purposes of Code of Civil Procedure section 863 is whether the public agency could have brought a validation action. (See Kaatz, supra, 143 Cal.App.4th at p. 32, 49 Cal.Rptr.3d 95.) Because section 10601 authorizes a public agency to bring a validation action, an interested person may file a reverse validation action under Code of Civil Procedure section 863. The restriction contained in section 10601 limits who may file the action authorized by that section; it does not limit the filing of the action authorized by section 863 of the Code of Civil Procedure. Accordingly, applying a workable and reasonable interpretation of section 10601, we conclude the validation statutes apply to a legal challenge to an assessment levied under the 1913 Act.
Appellants' complaint plainly constituted a challenge to the validity of an assessment levied under the 1913 Act. Appellants sought to invalidate the resolution creating the District and adopting the assessment. It is immaterial that appellants sought injunctive or declaratory relief in addition to a writ of mandate. Regardless of how parties may choose to denominate their causes of action, they are governed by the validation statutes if the matters addressed in them could be adjudicated in a validation action. (Friedland v. City of Long Beach (1998) 62 Cal.App.4th 835, 849-850, 73 Cal.Rptr.2d 427.) Appellants' complaint related exclusively to actions taken by the Town pursuant to the 1913 Act in order to create the District and levy assessments. It did not raise issues beyond the scope of what could be adjudicated in a validation action challenging the Town's Resolution No. 21-2005. (See Katz, supra, 144 Cal.App.4th at pp. 1033-1034, 50 Cal.Rptr.3d 839 [declaratory and injunctive relief merely constitute request for invalidation stated in other words]; but see City of Ontario, supra, 2 Cal.3d at p. 345, 85 Cal.Rptr. 149, 466 P.2d 693 [injunctive and restitution causes of action went beyond challenge to agreement that was subject to validation action].)
Appellants seek to avoid the requirements of the validation statutes by claiming they sought, at least in part, a remedy limited to their own properties. They claim the trial court erred by dismissing their complaint in its entirety instead of allowing them to proceed to the extent their complaint sought remedies specific to *201 their properties. The implication is that the validation statutes are inapplicable when interested persons do not seek to invalidate an assessment district as a whole but rather seek only to invalidate or reduce the special assessment levied on their particular properties. Appellants contend that a court need only acquire jurisdiction over the affected real property in such a case and not over all properties in the assessment district. Appellants cite no authority for this proposition, nor are we aware of any.[8] There is nothing in the statutory scheme governing validation actions providing that interested persons may avoid the requirements of the validation statutes by limiting the requested relief to their own properties.
As a practical matter, the rule advocated by appellants would undermine the purpose of the validation statutes and impair the ability of public agencies to implement projects financed through special assessment districts. The special assessment on appellants' properties was not levied in isolation and without regard to other properties in the District. Rather, it was part of an overall determination of the costs and benefits of placing utilities in the District underground. A court could not invalidate one property owner's special assessment without necessarily affecting the total cost of the project, the distribution of that cost among all affected property owners, and the ability of the public agency to secure financing for the project. Bonds secured by assessment liens would have uncertain value if property owners were allowed to individually challenge the liens on their properties without complying with the validation statutes. (Cf. Friedland v. City of Long Beach, supra, 62 Cal.App.4th at p. 851, 73 Cal.Rptr.2d 427 [if challenges other than validation actions allowed, lawsuits would cast legal cloud reducing marketability of financial instruments and impairing ability of public agency to act].) In short, appellants may not avoid the strictures of the validation statutes by claiming they sought relief only with respect to their individual properties.
Appellants contend the trial court erred by relying on Not About Water, supra, 95 Cal.App.4th 982, 116 Cal.Rptr.2d 526, in order to reach the conclusion that their complaint was governed by the validation statutes. In light of our conclusion based on section 10601 that an action to determine the validity of an assessment under the 1913 Act is a validation action, it is irrelevant that the trial court relied on other authority to reach the same conclusion. (See Florio v. Lau (1998) 68 Cal. App.4th 637, 653, 80 Cal.Rptr.2d 409 [appellate court reviews result, not reasoning, of trial court decision].) Nevertheless, to the extent Not About Water is relevant, the case supports our conclusion.
In Not About Water, property owners brought a mandate proceeding challenging *202 the formation of an assessment district and the subsequent levy of an assessment. (Not About Water; supra, 95 Cal.App.4th at p. 986, 116 Cal.Rptr.2d 526.) The assessment district was formed under the provisions of the 1913 Act. (Id. at p. 992, 116 Cal.Rptr.2d 526.) The property owners claimed, among other things, that county officials had gerrymandered the district in order to exclude property owners who might vote against the district. (Id. at p. 990, 116; Cal.Rptr.2d 526.) Although the appellate court in Not About Water did not address whether the property owners were required to comply with the validation statutes, it began its discussion with the statement that the proceeding was a "special statutory action known as a validation proceeding." (Id. at p. 986, 116 Cal.Rptr.2d 526.) This determination was not mere dicta but was necessary to establish the standard of review applicable to the action. (Ibid.) The court noted that "judicial review of challenges to public improvement determinations made by a local governmental agency is circumscribed both by the legislative character of such municipal proceedings and the exclusivity of a special statutory proceeding  codified as Code of Civil Procedure sections 860 et seq.  as the sole procedure available `to determine [its] validity.' [Citation.]" (Id. at pp. 992-993, 116 Cal.Rptr.2d 526.) The court did not explain how it arrived at the conclusion the proceeding was a validation action, nor did it cite or rely on section 10601. Nevertheless, the court's characterization of the action supports the proposition that interested persons may file a reverse validation action to challenge an assessment levied under the 1913 Act.
Appellants also argue that, other than Not About Water, most of the cases cited by the parties to this litigation concern either redevelopment projects or taxpayer lawsuits. The implication, apparently, is that while it is well settled that challenges to redevelopment projects are governed by the validation statutes, there is sparse case authority addressing whether an individual property owner's challenge to a special assessment lien is considered a validation action. The argument is unpersuasive for several reasons. First, validation actions commonly involve challenges to assessments. As our Supreme Court stated more than 30 years ago, "The typical validating action seeks a declaratory judgment that the bonds, assessments, etc., of the agency are or are not valid. . . ." (City of Ontario, supra, 2 Cal.3d at p. 344, 85 Cal.Rptr. 149, 466 P.2d 693.) Second, and more importantly, it is immaterial that there may be scant case law addressing validation actions under the 1913 Act. The authority for treating such a proceeding as a validation action is statutory. (§ 10601; Code Civ. Proc., §§ 860, 863.)

C. Invoking Proposition 218 in an Action Challenging a Special Assessment under the 1913 Act does not Render the Validation Statutes Inapplicable.
Appellants contend that the validation statutes are inapplicable to a challenge to a special assessment premised on Proposition 218. More specifically, appellants argue that subdivision (f) of section 4 of article XIII D of the California Constitution affords property owners an individual right to contest the legality of a special assessment. They claim it is not necessary to serve notice by publication and to acquire in rem jurisdiction in order for a court to have jurisdiction to grant the purported "individual remedy" provided by Proposition 218.
Proposition 218 is perhaps best understood as a supplement to the assessment district formation process provided by various statutes, including the 1913 Act. *203 It establishes the procedures that must be followed leading up to the levy of a "special assessment" or "benefit assessment." (Cal. Const, art. XIII D, § 4.) Proposition 218 renders unconstitutional any contradictory procedure leading to the adoption or levy of an assessment falling within its ambit. (Barratt American, Inc. v. City of San Diego (2004) 117 Cal.App.4th 809, 818,12 Cal.Rptr.3d 132.)
Although appellants' argument suggests there is something new about a challenge to an assessment on the ground a property receives no special benefits over and above that conferred generally, the principle allowing a "special benefits" challenge predates the 1996 enactment of Proposition 218. (See, e.g., Knox v. City of Orland, supra, 4 Cal.4th at p. 146, 14 Cal.Rptr.2d 159, 841 P.2d 144 [special assessment may not be set aside unless assessment not proportional to benefits bestowed on property]; Dawson v. Town of Los Altos Hills, supra, 16 Cal.3d at p. 685, 129 Cal.Rptr. 97, 547 P.2d 1377 [same].) The sole reference in Proposition 218 to legal actions contesting the validity of assessments is in article XIII D, section 4, subdivision (f), which provides: "In any legal action contesting the validity of any assessment, the burden shall be on the agency to demonstrate that the property or properties in question receive a special benefit over and above the benefits conferred on the public at large and that the amount of any contested assessment is proportional to, and no greater than, the benefits conferred on the property or properties in question." This provision addresses who bears the burden in a legal action contesting the validity of an assessment, but it does not create a separate or distinct right of action to challenge an assessment.[9] Moreover, nothing in Proposition 218 suggests that a property owner has the right to pursue an in personam cause of action against a public agency to invalidate a special assessment.
Appellants contend the procedural requirements of the validation statutes are "directly inconsistent" with the intent of Proposition 218. We disagree. The validation statutes and Proposition 218 address different concerns. Whereas Proposition 218 mandates compliance with certain procedures before a special assessment may be levied, the validation statutes provide rules of procedure for legal actions challenging an assessment after its adoption. To the extent Proposition 218 refers to a challenge to the validity of an assessment, it merely addresses the public agency's burden in a legal action. Nothing in the validation statutes is inconsistent with this imposition of the burden on the public agency. It is also not inconsistent with Proposition 218's intent to require the type of expedited, conclusive, and binding determination provided for in the validation statutes.
We do not suggest that property owners lack the ability to challenge violations of Proposition 218. A property owner may seek to invalidate a special assessment on the ground the procedures leading to the assessment's adoption violated Proposition 218. The nature of the action is dictated by the statutory scheme, such as the 1913 Act, under which the assessment was levied. In the case of the 1913 Act, such a proceeding must be filed as a reverse validation action. This is so regardless of whether the challenge is premised on asserted *204 violations of Proposition 218 or any other constitutional provision. (See Friedland v. City of Long Beach, supra, 62 Cal.App.4th at pp. 846-847, 73 Cal.Rptr.2d 427 [validation statutes apply to constitutional challenges].)

D. Revenue and Taxation Code Provisions Relating to Property Tax Assessments Are Inapplicable.
Appellants contend that provisions of the Revenue and Taxation Code allow property owners individually to challenge real property tax liens imposed on their properties. Specifically, they cite and purport to rely on sections 1603 et seq., 1615, and 5140 et seq. of the Revenue and Taxation Code. In the cursory, three-sentence argument addressed to this issue in their opening brief, appellants utterly fail to explain why these provisions of the Revenue and Taxation Code apply.
Revenue and Taxation Code sections 1601 through 1721 authorize property owners to apply for a reduction in a real property tax assessment. Revenue and Taxation Code section 5140 et seq. relates to tax refunds. These statutes concern property taxes, which are not at issue here. As noted above, special assessments differ in important respects from taxes. Whereas individual property owners may challenge the assessed value of their properties without impairing the functioning of a public agency, the same cannot be said for a challenge to the validity of a special assessment, which forms part of an overall financing scheme for a public improvement. The public agency's ability to finance and carry out the project is necessarily affected by such an individual challenge, thus explaining why it must be pursued as a validation action. In short, the provisions of the Revenue and Taxation Code cited by appellants have no bearing on this dispute.

2. The Trial Court Acted Within Its Discretion In Finding No Good Cause for Appellants' Noncompliance with the Validation Statutes.
Section 863 of the Code of Civil Procedure provides a good cause exception for an interested party's failure to comply with the summons publication requirement of the validation statutes. Appellants contend the trial court abused its discretion by failing to find good cause excusing their noncompliance. Among other things, they claim to have made a good faith effort to comply with the validation statutes, the Town suffered no prejudice by their delay, and the issue of whether the validation statutes apply is "complex and debatable." We conclude the trial court acted within it discretion.

A. Appellants' Failure to Comply with the Summons Publication Requirements Did Not Result from a Reasonable But Mistaken Appraisal of a "Complex and Debatable" Issue.
Appellants argue there is good cause for their noncompliance with the summons publication requirement of section 863 of the Code of Civil Procedure because the issue of whether the validation statutes apply is "complex and debatable." We agree with the trial court's conclusion that appellants have pointed to no complex and debatable issue justifying their failure to comply with the validation statutes.
"[A] mistaken but reasonable decision by plaintiffs' counsel that [the validation statutes] did not apply constitutes good cause for the trial court to permit belated compliance with [their] terms. Counsel are not expected to be omniscient, as the Legislature plainly recognized by writing the `good cause' exception into [Code of Civil Procedure] section 863." *205 (City of Ontario, supra, 2 Cal.3d at p. 346, 85 Cal.Rptr. 149, 466 P.2d 693.) "`"The issue of which mistakes of law constitute excusable neglect presents a fact question; the determining factors are the reasonableness of the misconception and the justifiability of lack of determination of the correct law. [Citation.] Although an honest mistake of law is a valid ground for relief where a problem is complex and debatable, ignorance of the law coupled with negligence in ascertaining it will certainly sustain a finding denying relief." [Citation.]' [Citation.]" (Ibid.)
In City of Ontario, our Supreme Court found good cause under section 863 of the Code of Civil Procedure because the applicability of the validation statutes was unclear. In that case, the plaintiffs challenged an agreement between a city and a private contractor to finance the construction of a motor speedway with tax-exempt bonds. (City of Ontario, supra, 2 Cal.3d at p. 338, 85 Cal.Rptr. 149, 466 P.2d 693.) In addition to seeking a declaratory judgment that the entire scheme was invalid, plaintiffs also sought restitution and injunctive relief. (Id. at p. 339, 85 Cal.Rptr. 149, 466 P.2d 693.) The court determined the validation statutes were "arguably applicable" to the extent the plaintiffs sought to invalidate the bonds and accompanying agreements relating to the motor speedway. (Id. at p. 344, 85 Cal.Rptr. 149, 466 P.2d 693.) However, the court also concluded that the injunctive and restitutionary relief sought by the plaintiffs went beyond the terms of the agreements and that injunctive relief was available to prevent illegal expenditures under a contract entered into by a public agency regardless of the validity of the bonds, assessments, or other financial matters. (Ibid.) Because the injunction and restitution causes of action went beyond matters subject to validation, the issue of whether the validation statutes applied presented a complex and debatable issue justifying relief under section 863 of the Code of Civil Procedure. (Id. at pp. 345-348, 85 Cal.Rptr. 149, 466 P.2d 693.)
Another published case in which an appellate court found a complex and debatable issue justifying relief from the summons publication requirement is Millbrae School Dist. v. Superior Court (1989) 209 Cal.App.3d 1494, 261 Cal.Rptr. 409 (Millbrae). The issue in Millbrae was whether the validation statutes applied when the interested person challenging the public agency's action was another public agency. Section 869 of the Code of Civil Procedure provides that the validation statutes do not preclude "any public agency" from pursuing other remedies to validate their actions, suggesting that a third party public agency is not limited to filing a validation action in order to challenge another public agency's action. The court found that "[o]nly by digging several layers beneath the perplexing and ambiguous wording of [Code of Civil Procedure] section 869 could one discover that [it] does not excuse third party agencies from using the validating proceedings when challenging the actions of another agency." (Millbrae, supra, 209 Cal.App.3d at p. 1500, 261 Cal.Rptr. 409.)
Appellants here have failed to identify any complex and debatable issues akin to those discussed in City of Ontario or Millbrae. In their brief opposing the Town's motion to dismiss, appellants identified two issues that purportedly render the applicability of the validation statutes a complex and debatable question. First, they claimed the Town had cited no authority establishing that the validation statutes applied to a "special benefits" determination governed by Proposition 218 (Cal. Const., art. XIII D, § 4) and related to a utility assessment district and a specific parcel of property. Second, they contended the validation statutes were inapplicable to their *206 requests for injunctive and declaratory relief.[10] On appeal, appellants appear to have abandoned the second argument, choosing to focus instead on whether the validation statutes apply to a "special benefits" challenge to an assessment premised on section 4, subdivision (f) of article XIII D of the California Constitution.
The issue is neither complex nor debatable. A property owner's right to challenge a special assessment on the ground there is no proportional "special benefit" conferred on the affected property existed long before the passage of Proposition 218. (See Harrison v. Board of Supervisors, supra, 44 Cal.App.3d at pp. 856-857, 118 Cal.Rptr, 828 [citing Supreme Court precedent dating back to 1915 concerning principle that special assessment must be justified by special benefits].) The fact an interested person may choose to invoke the constitutional provisions added by Proposition 218 in a challenge to an assessment levied under the 1913 Act does not render the validation statutes inapplicable. Nothing in Proposition 218 can be fairly read to suggest such a result, and the constitutional nature of the challenge does not change the analysis. It is well settled that constitutional challenges to a matter otherwise subject to the validation statutes must be raised in a validation action. (Friedland v. City of Long Beach, supra, 62 Cal.App.4th at pp. 846-847, 73 Cal.Rptr.2d 427.) Furthermore, in Not About Water, the court stated that an action by property owners to invalidate an assessment under the 1913 Act was a validation action. (Not About Water, supra, 95 Cal.App.4th at p. 986, 116 Cal.Rptr.2d 526.) Notably, the court made this determination notwithstanding its consideration of Proposition 218 elsewhere in its opinion. (Id. at pp. 1000-1001,116 Cal.Rptr.2d 526.)
Even if there were a complex and debatable issue with respect to the application of the validation statutes, appellants have not shown any causal connection between that fact and their failure to comply with the validation statutes. As the court in City of Ontario explained, the trial court must not only determine whether there is a complex and debatable question of law, but it must also determine "whether counsel for plaintiffs acted in reasonable but mistaken reliance on their appraisal of that question."[11] (City of Ontario, supra, 2 Cal.3d at p. 347, 85 Cal.Rptr. 149, 466 P.2d 693.) A declaration filed by appellants' counsel in the trial court makes clear that counsel was not even aware of the existence, much less *207 the possible application, of the validation statutes until the fifty-ninth day after the complaint was filed. There is nothing in the record to indicate that appellants made a timely and reasoned determination that the validation statutes did not apply as a result of appellants' invocation of Proposition 218.
One might argue the applicability of the validation statutes is debatable because of language contained in section 10601 suggesting that no one other than a legislative body or a contractor may file a validation action. As we concluded earlier in this opinion, that statute does not preclude a reverse validation action under section 863 of the Code of Civil Procedure. Nevertheless, we would agree the proper interpretation of section 10601 is hardly straightforward. Unfortunately for appellants, however, they may not rely on any complexity arising from the interpretation of section 10601 in order to justify relief under the good cause exception of Code of Civil Procedure section 863. The reason is simple. They did not raise the issue or even cite the statute in this litigation until we requested that counsel be prepared to discuss at oral argument the applicability of section 10601. Thus, there is no indication they chose not to comply with the validation statutes as a result of a reasonable but mistaken interpretation of section 10601. Appellants obviously may not justify their noncompliance with the validation statutes based on a complexity they never identified or brought to the trial court's attention.
Our task is not to determine whether, in the abstract, one could argue the applicability of the validation statutes is a complex and debatable question. Rather, we assess the trial court's good cause determination to ascertain whether, on the facts before it, the trial court abused its discretion. Here, there was no abuse of discretion. Appellants had the burden of proof to establish good cause, yet their efforts to identify a complex and debatable issue justifying relief plainly fell short. It is much too late for appellants to rely on section 10601 as the basis for an argument that the applicability of the validation statutes is complex and debatable.

B. The Trial Court Was Not Compelled to Find Good Cause as a Result of Appellants' Good Faith Efforts and any Lack of Prejudice.
Appellants contend the trial court should have taken into account their good faith efforts to comply with the statute and the lack of prejudice suffered by the Town as a result of any delay. However, there is nothing in the record to indicate the trial court ignored these factors or refused to consider them.
The fact that appellants served all affected property owners by mail does not compel the conclusion they should be excused from timely compliance with section 863 of the Code of Civil Procedure. When jurisdiction is obtained by constructive notice, such as in a validation action, the statutory conditions of service must be strictly observed or else the court lacks power to render a judgment. (Community Redevelopment, supra, 248 Cal.App.2d at p. 178, 56 Cal.Rptr. 201.) Appellants' service of notice by mail on all property owners did not comply with the statute or confer in rem jurisdiction on the trial court. Further, a belated attempt to notify interested persons and a purported lack of prejudice do not, by themselves, constitute good cause for failure to comply with the summons publication requirement of the validation statutes. Such considerations may be relevant in assessing whether it is equitable to permit an action to proceed despite noncompliance with the *208 statutory requirements, but they do not establish a reason for the failure to comply. (See Katz, supra, 144 Cal.App.4th at p. 1036, 50 Cal.Rptr.3d 839 [alleged absence of prejudice does not supply reason for failure to comply].)
Appellants rely on Arnold v. Newhall County Water Disk (1970) 11 Cal.App.3d 794, 96 Cal.Rptr. 894 (Arnold), but that case does not aid them. In Arnold, the proof of publication was filed more than 60 days after the filing of the complaint, and the published summons did not set forth the correct period of time within which an answer could be filed by interested persons. (Id. at p, 799, 96 Cal.Rptr. 894.) Nearly two years after the complaint was filed, the defendant filed a motion to dismiss, claiming the summons was defective and the proof of publication had not been timely filed. (Id. at p. 802, 96 Cal.Rptr. 894.) In a declaration opposing the motion, the plaintiffs attorney explained that he had instructed his secretary to timely file the proof of publication when it was received from the newspaper, but that he could not recall why she failed to carry out his instructions. (Id. at pp. 802-803, 96 Cal.Rptr. 894.) The trial court denied the motion to dismiss. (Id. at p. 803, 96 Cal. Rptr. 894.) On appeal from a judgment favoring the plaintiff, the appellate court concluded that the trial court never acquired in rem jurisdiction to hear the case because of deficiencies in the procedure relating to the summons. (Id. at p. 801, 96 Cal.Rptr. 894.) The question presented was whether the judgment should be reversed with directions to dismiss, or whether the plaintiff should be given an opportunity to show good cause for his noncompliance with statutory requirements under Code of Civil Procedure section 863. (Id. at pp. 801-802, 96 Cal.Rptr. 894.) The court chose the latter option, stating: "[I]n view of the fact that two years elapsed between the filing of the action and the determination of the district's motion to dismiss pursuant to the provisions of section 863 of the Code of Civil Procedure, the interests of justice dictate that the plaintiff be afforded the opportunity to seek an order for the publication of proper summons in accordance with the governing statutory law on the ground that plaintiff had proceeded in good faith but the publication of the summons had been delayed without his fault." (Id. at p. 803, 96 Cal.Rptr. 894.)
The facts here bear little relation to those in Arnold. We agree with the trial court, which distinguished Arnold by noting that "[i]n our case, there has been no similar lapse of two years and there has been no showing that counsel took immediate steps to accomplish the necessary service by publication." Indeed, appellants took no steps to effect service by publication until after the 60-day statutory period had run. Unlike the plaintiff in Arnold, who understood the validation statutes applied but could at least argue any delays were beyond his control or not his fault, appellants can make no such claims. Furthermore, the appellate court in Arnold did not find good cause under Code of Civil Procedure section 863 but rather remanded the matter to the trial court to afford the plaintiff an opportunity to make a showing of good cause. Here, appellants were afforded an opportunity to make such a showing, which the trial court found lacking.

C. The Town did not Waive Its Right to Challenge Appellants' Noncompliance with the Validation Statutes.
Appellants claim the Town waived its right to challenge their noncompliance with the validation statutes. First, appellants contend that by filing an answer and an opposition brief addressing the merits, the Town waived its right to dismiss the *209 action under Code of Civil Procedure section 863. Second, appellants argue that by failing to oppose their ex parte motion to amend the summons to include "all interested persons," the Town also waived its right to seek dismissal.
Appellants offer no legal authority to support their assertions. The issue is therefore deemed waived. (See People v. Stanley (1995) 10 Cal.4th 764, 793, 42 Cal. Rptr.2d 543, 897 P.2d 481.) In any event, the answer was due before the 60-day period to file proof of publication had expired, so the Town could not have been expected to seek dismissal of the action before the answer was due. Although the Town filed a brief on the merits along with its motion to dismiss, we are aware of no rule of law precluding consideration of a motion to dismiss under such circumstances. Furthermore, the Town filed its brief on the merits because it was compelled to do so by the briefing schedule established by the court. With regard to the notion the Town waived its right to dismiss by failing to oppose appellants' ex parte motion, the claim is meritless. The court's order on appellants' ex parte motion simply permitted them to amend the summons. The order did not grant additional time to comply with the requirements of Code of Civil Procedure section 863. The Town thus did not waive its right to dismiss by offering no opposition to appellants' ex parte request to amend the summons.
We are mindful that dismissal of appellants' complaint on the facts presented here may seem harsh. Indeed, we are not the first court to make such an observation about the consequences of noncompliance with the summons publication requirements of the validation statutes. (See County of Riverside, supra, 54 Cal.App.4th at p. 451, 62 Cal.Rptr.2d 747.) We do not doubt that appellants acted in good faith, but the fact remains that proof of publication Was not timely filed, compelling dismissal under Code of Civil Procedure section 863 unless appellants demonstrated good cause for their noncompliance. The record reveals that appellants' counsel failed to timely comply with the summons publication requirements because he was unaware of the existence of the validation statutes, not because he mistakenly but reasonably concluded at the outset they were inapplicable. Unquestionably, dismissal is a severe sanction for a mistake of law, but not every mistake of law supports a finding of good cause. (See Katz, supra, 144 Cal.App.4th at p. 1036, 50 Cal.Rptr.3d 839.) On this record, we cannot say the trial court abused its discretion in finding no good cause for appellants' failure to timely file proof of publication.

Disposition
The judgment of dismissal is affirmed. Respondents shall recover their costs on appeal.
We concur: PARRILLI and SIGGINS, JJ.
NOTES
[1] All further statutory references are to the Streets and Highways Code unless otherwise specified.
[2] Thus, for example, before the voters approved Proposition 218, a public agency could adopt a special assessment under the 1913 Act over the protest of a majority of affected property owners with a four-fifths vote of the agency's legislative body. (See former § 10311, as amended by Stats. 1994, ch. 860, § 5.) After the adoption of Proposition 218, a public agency may not override the affected property owners' rejection of a proposed assessment district. (Cal. Const., art. XIII D, § 4, subd. (e).)
[3] Except where necessary to distinguish between direct validation actions filed by a public agency and reverse validation actions filed by an interested person, our use of the term "validation action" encompasses both types of action.
[4] There is nothing in the record confirming that the trial court issued an order extending by two days appellants' time to comply with the validation statutes. The only reference in the record to the supposed order of August 15, 2005, is contained in a declaration filed by appellants in the trial court on August 17, 2005.
[5] Specifically, section 863 of the Code of Civil Procedure provides that in any validation action filed by an interested person "the summons shall be in the form prescribed in [Code of Civil Procedure] Section 861.1 except that in addition to being directed to `all persons interested in the matter of [specifying the matter],' it shall also be directed to the public agency. If the interested person bringing such action fails to complete the publication and such other notice as may be prescribed by the court in accordance with [Code of Civil Procedure] Section 861 and to file proof thereof in the action within 60 days from the filing of his complaint, the action shall be forthwith dismissed on the motion of the public agency unless good cause for such failure is shown by the interested person." The summons must be published in a newspaper of general circulation once a week for three successive weeks. (Code Civ. Proc., § 861; Gov. Code, § 6063.)
[6] Somewhat surprisingly, none of the parties to this appeal identified a statutory basis to apply the validation statutes to an action challenging a special assessment levied under the 1913 Act. In preparation for oral argument, we requested that counsel be prepared to discuss the relevance of section 10601 and identify any other statutory authority for applying the validation statutes under the circumstances presented here. While counsel for appellants disputed whether section 10601 requires that a challenge to a special assessment be pursued as a reverse validation action, counsel nonetheless agreed that section 10601 is the only possible statutory basis for invoking the validation statutes in an action such as theirs. (Cf. § 10100.2, subd. (e) [authorizing validation action with regard to earthquake-related improvements].) The Town's counsel acknowledged that section 10601 is the relevant statutory authority.
[7] The statutory language specifying that a validation action under the 1913 Act could be filed by the legislative body or a contractor pre-dates the 1961 enactment of the validation statutes. In 1940, the Legislature amended the 1913 Act to provide that the "city council" or "any contractor, at any time after the award of contract to him, may bring an action . . . to determine the validity of said proceedings, assessment, bonds, contract, improvement or acquisition, or any thereof." (Stats. 1941, 1st Ex.Sess.1940, ch. 35, § 7, p. 93.) Thus, the provision identifying the legislative body and any contractor as parties who could bring a validation action was plainly not adopted to limit the application of the validation statutes (Code Civ. Proc., § 860 et seq.), which were enacted more than 20 years after the 1940 amendment that first added this language.
[8] During oral argument, appellants' counsel cited Harrison v. Board of Supervisors (1975) 44 Cal.App.3d 852, 118 Cal.Rptr. 828, apparently for the proposition there is no need to comply with the validation statutes when interested persons file individual challenges to an assessment district created pursuant to the 1913 Act. In Harrison, the issue was whether a judgment enjoining the collection of a special assessment should extend to all affected property owners or instead be limited to those who complained about the assessment. (Id. at pp. 855, 859, 118 Cal.Rptr. 828.) The court concluded the judgment voided the entire assessment district and therefore extended to property owners who were not parties to the action. (Id. at pp. 863-864, 118 Cal. Rptr. 828.) Contrary to appellants' assertion, the opinion contains no indication that interested persons challenging an assessment levied under the 1913 Act may disregard the requirements of the validation statutes. A decision is not authority for a point not raised or considered. (Palmer v. Ted Stevens Honda, Inc. (1987) 193 Cal.App.3d 530, 539, 238 Cal. Rptr. 363.)
[9] The issue of what standard of review a court should apply in reviewing a public agency's "special benefits" determination is presently before our Supreme Court. (See Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority (2005) 130 Cal.App.4th 1295, 30 Cal.Rptr.3d 853, review granted Oct. 12, 2005, S136468.)
[10] As discussed earlier in this opinion, it is irrelevant that appellants pleaded causes of action seeking injunctive and declaratory relief because the matters addressed in those causes of action are within the scope of what could be adjudicated in a validation action challenging the Town's resolution adopting the special assessment. (See Katz, supra, 144 Cal.App.4th at pp. 1033-1034, 50 Cal.Rptr.3d 839.)
[11] In City of Ontario, the court rejected an argument by the public agency that there was no causal connection between the plaintiffs' noncompliance with the validation statutes and the existence of a complex and debatable issue as to their application. (City of Ontario, supra, 2 Cal.3d at p. 347, 85 Cal.Rptr. 149, 466 P.2d 693.) The court held the plaintiffs were not required to introduce evidence that they relied on a mistaken but reasonable interpretation of the issue. Instead, the ruling could be based on counsel's representations to the court about their understanding and intent. (Ibid.) Because the public agency was the moving party and had failed to supply the reviewing court with an adequate record showing what representations were made by plaintiffs, the agency's argument failed. (Ibid.) Here, by contrast, we have an adequate record disclosing that appellants' counsel stated he "discovered" the existence of the validation statutes only after receiving the Town's answer and while he was preparing appellants' opening brief, when it was already too late to comply.